UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) ALEXANDRA GUILLOU, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>1) BOARD OF REGENTS FOR THE )<br>   OKLAHOMA AGRICULTURAL AND )<br>   MECHANICAL COLLEGES; )<br>2) STATE OF OKLAHOMA ex rel. )<br>   OKLAHOMA STATE UNIVERSITY; )<br>3) ST. MATTHEWS UNIVERSITY, INC.; )<br>4) LUCINDA KERSHAW; )<br>5) DR. DANIEL BURBA; )<br>6) DR. CHRIS ROSS; and )<br>7) DR. MARGI GILMOUR, )<br>)<br>Defendants ) | Case No.: CIV-17-988-HE |

## MOTION TO DISMISS

COME NOW, the Defendants, the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges and the State of Oklahoma ex rel. Oklahoma State University, hereinafter collectively referred to as "Defendants" and move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint filed by Plaintiff for failure to state a claim upon which relief can be granted.

## BRIEF IN SUPPORT

### STANDARD OF REVIEW

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6),

1

Plaintiff's Complaint must contain sufficient facts which, accepted as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is not plausible unless Plaintiff pleads facts leading to a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As shown herein, Plaintiff failed to meet her burden under the liberal pleading standards of the Federal Rules of Civil Procedure and her claims should be dismissed.

## BACKGROUND

Plaintiff is a student of the veterinary program at St. Matthew's University ("SMU") in the Cayman Islands. SMU has an affiliation agreement with Oklahoma State University ("OSU") which allows SMU students to complete required clinical rotations at OSU. Students under this agreement are at all times students of SMU and, upon successful completion of clinical rotations, receive their degree from SMU.

Plaintiff began clinical rotations at OSU in the fall of 2016 and encountered attendance problems almost immediately. After several absences in the early days of the rotation schedule, Plaintiff requested that she be excused from coursework for a period of three to four weeks due to medical reasons. OSU granted her request for an accommodation.

Plaintiff was scheduled to return to clinical rotations in mid-October of 2016 following her medical leave. To date, Plaintiff has not returned to clinical rotations, despite attempts by OSU to schedule a date for Plaintiff to return.

It is imperative to note what is *not* alleged by Plaintiff. Plaintiff has not alleged that she was dismissed from the clinical rotation program at OSU because she was not. Plaintiff

has not alleged that she received negative grades as a result of her request for an accommodation because she did not. Plaintiff has not alleged that she is owed a reimbursement of any tuition paid to OSU because she has not paid any.

Defendants' reference herein to any factual allegations contained in Plaintiff's Complaint does not constitute confirmation or denial of the allegations. Defendants note that many of the factual allegations set forth by Plaintiff are demonstrably untrue. However, Defendants acknowledge that Plaintiff's allegations must be taken as true for purposes of this Motion to Dismiss.

## ARGUMENTS AND AUTHORITIES

**I.  Plaintiff's claim for retaliation under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 should be dismissed for failure to state a claim upon which relief can be granted.**

A prima facie retaliation claim under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act requires Plaintiff to show: (1) she engaged in a protected activity; (2) she was subjected to adverse action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Courts generally analyze claims under the ADA in the same manner as Title VII claims due to the similarities in the statutes. *See, e.g. E.E.O.C. v. C.R. England, Inc.* 644 F.3d 1028, 1038 (10th Cir. 2011); *Lanman v. Johnson Cnty. Kan.*, 393 F.3d 1151, 1155 (10th Cir. 2004).

Plaintiff alleges that she engaged in three protected activities: (1) she requested an accommodation under the ADA; (2) she reported that she considered a voicemail left by

has not alleged that she received negative grades as a result of her request for an accommodation because she did not. Plaintiff has not alleged that she is owed a reimbursement of any tuition paid to OSU because she has not paid any.

Defendants' reference herein to any factual allegations contained in Plaintiff's Complaint does not constitute confirmation or denial of the allegations. Defendants note that many of the factual allegations set forth by Plaintiff are demonstrably untrue. However, Defendants acknowledge that Plaintiff's allegations must be taken as true for purposes of this Motion to Dismiss.

## ARGUMENTS AND AUTHORITIES

**I.  Plaintiff's claim for retaliation under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 should be dismissed for failure to state a claim upon which relief can be granted.**

A prima facie retaliation claim under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act requires Plaintiff to show: (1) she engaged in a protected activity; (2) she was subjected to adverse action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Courts generally analyze claims under the ADA in the same manner as Title VII claims due to the similarities in the statutes. *See, e.g. E.E.O.C. v. C.R. England, Inc.* 644 F.3d 1028, 1038 (10th Cir. 2011); *Lanman v. Johnson Cnty. Kan.*, 393 F.3d 1151, 1155 (10th Cir. 2004).

Plaintiff alleges that she engaged in three protected activities: (1) she requested an accommodation under the ADA; (2) she reported that she considered a voicemail left by

an OSU employee to be a violation of her rights; and (3) she hired an attorney to contact OSU on her behalf. However, Plaintiff failed to plead facts which show she was subjected to any adverse action. For ADA retaliation claims, Courts employ the same analysis used in Title VII retaliation claims to determine whether an action is adverse. *See, e.g. A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013). To be adverse, an action must be "enough to dissuade a reasonable person from engaging in the protected activity." *Id.* at 698. Actions that result in "trivial harm" or "petty slights, minor annoyances, and simple lack of good manners" do not constitute retaliation as these activities do not deter a reasonable person from engaging in protected activity. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

**A.    Alleged Retaliation Following Request for Medical Accommodation**

Plaintiff alleges she was subjected to an adverse action when she was required to meet with administrators at OSU to discuss her request for medical accommodation. Plaintiff further alleges OSU administrators "interrogated her about her medical diagnosis." Compl. ¶ 57. In the context of a graduate program based upon clinical rotations such as the one in which Plaintiff was enrolled, attendance at assigned rotations is critical to ensure sufficient services are provided to the operating clinic's clients. It is incumbent upon administrators at OSU to meet with students who require accommodations to ensure that the accommodations requested are reasonable and can be provided. Administrators from OSU meeting with Plaintiff and discussing her medical diagnosis and requested accommodation does not constitute an adverse action; it was necessary to implement Plaintiff's requested accommodation and ensure that she could successfully progress in the

4

program.[1]  It is wholly unreasonable to expect that Plaintiff's requested accommodation could be achieved without such a dialogue.

Plaintiff next alleges comments inadvertently left on Plaintiff's voicemail by administrative staff at OSU constitute an adverse action.  Compl. ¶ 57.  The comments were simply venting by frustrated administrative staff who had no ability to impact Plaintiff's status or grades.  Plaintiff conflated these remarks into a purported personal threat against her safety, yet never contacted the police to file a complaint, despite being offered assistance in doing so by OSU staff.

The Tenth Circuit held that employees rolling their eyes, laughing at, snickering at, and making individual comments about other staff members during a staff meeting does not meet the objective standard required to prove retaliation.  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1215 (10th Cir. 2008).  The Seventh Circuit similarly held that a supervisor calling an employee a "trouble-maker, a cry baby, and a spoiled child…were not materially adverse." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101 (7th Cir. 2012).

The alleged comments made on Plaintiff's voicemail are more in line with a petty

---

[1] The U.S. Department of Education Office for Civil Rights provides guidance regarding providing accommodations to post-secondary education students.  The guidance provides that "institution staff should discuss with the student what academic adjustments are appropriate in light of the student's individual needs and the nature of the institution's programs. Students with disabilities possess unique knowledge of their individual disabilities and should be prepared to discuss the functional challenges they face and, if applicable, what has or has not worked for them in the past.  Institution staff should be prepared to describe the barriers students may face in individual classes that may affect their full participation, as well as discuss academic adjustments that might enable students to overcome those barriers." See
https://www2.ed.gov/about/offices/list/ocr/transitionguide.html#note12.

slight or annoyance and are akin to the eye rolls, snickering, and individual comments in *Somoza* and the negative comments made in *Brown*, all of which were found not to be actionable. A reasonable person would not be dissuaded from engaging in the protected activity as a result of the alleged comments.

Plaintiff then alleges she was subjected to adverse action by OSU notifying SMU that Plaintiff's leave was due to "family problems" rather than a health issue in order to "undermine [Plaintiff's] professional reputation and make her look bad, weak, and incompetent to SMU." Compl. ¶ 57. OSU and SMU maintain close contact about the progress of SMU students in the OSU clinical rotation. And rightly so. SMU must stay apprised of their students' progress, as SMU will ultimately confer degrees to successful students. OSU notified SMU that Plaintiff was taking a leave of absence; this is not an adverse action. Assuming OSU stated the leave of absence was for family reasons, there is still no adverse action. Regardless of the reason the leave was taken, Plaintiff's request for leave was granted and her home institution was notified of the leave of absence. Again, Plaintiff's allegation is more in the nature of a petty slight and would not dissuade a reasonable person from engaging in the protected activity.

**B.     Alleged Retaliation Prior to and Following Report of Comments in Voicemail**

Plaintiff next alleges she was subjected to adverse actions as a result of her report that she considered a voicemail left on her phone to be threatening and a violation of her rights. Compl. ¶ 59. First, Plaintiff alleges that Margi Gilmour, an OSU employee, told Plaintiff that reporting the voicemail would cause problems for Plaintiff. Compl. ¶ 60. Yet, Plaintiff does not allege that any problems actually occurred. The Seventh Circuit held

that the comment "[p]aybacks are hell" following an employee's filing of a sexual harassment complaint, without evidence that the individual making the comment had previously sabotaged the careers of others similarly situated, was not actionable, noting "[i]t is well established that unfulfilled threats that result in no material harm cannot be considered an adverse…action." *Dunn v. Wash. Cnty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005), *citing Hottenroth v. Slinger*, 388 F.3d 1015, 1030 (7th Cir. 2004).

Like *Dunn*, Plaintiff's allegation is of an unfulfilled threat. Plaintiff does not allege any facts to indicate that Dr. Gilmour has any history of negatively impacting the careers of other veterinary students nor does Plaintiff allege that any problems actually occurred for her following the comment. A reasonable person would not be dissuaded from making a report based upon the alleged unfulfilled threat of Margi Gilmour. Moreover, Plaintiff proceeded to make a complaint to the OSU Office of Equal Opportunity following the alleged threat and does not allege any adverse actions occurred as a result.

Second, Plaintiff alleges that OSU advised SMU Plaintiff was having "issues" with the clinical program, resulting in SMU "questioning [Plaintiff] and treating her harshly." Compl. ¶ 60. As previously stated, OSU was obligated to keep SMU apprised of the status of SMU students' progress. Advising SMU that Plaintiff was granted a leave of absence is in no way an adverse action. Any actions SMU took with regard to its treatment of Plaintiff as a result of this information were outside the control of OSU and cannot be an adverse action by OSU.

C.     **Alleged Retaliation Following Communications from Plaintiff's Legal Counsel**

At the outset, Defendants note that the communication from Plaintiff's legal counsel

7

actually came *after* both of the alleged adverse actions.  Further, although Plaintiff has plead a contrary timeline, the Court should be aware that Defendants did not know Plaintiff had engaged legal counsel at the time both actions occurred.[2]  However, taking the facts as pled by Plaintiff as true, the articulated actions were not adverse.  Plaintiff alleges OSU "called her mother, ostensibly to 'check up' on her because they were concerned." Compl. ¶ 63.  She then alleges OSU "summoned the police…which resulted in the police unexpectedly showing up and demanding access to [Plaintiff's] residence." Compl. ¶ 63.

OSU administrators, including both administrators at OSU and in the Office of Equal Opportunity, worked closely with Plaintiff to accommodate her leave and ensure that she had every opportunity to return to and be successful in the clinical rotation program.  When two months had gone by with no communication from Plaintiff, OSU administrators became concerned about her well-being.  After trying to contact Plaintiff, the interim dean of OSU contacted Plaintiff's mother, who is listed as her emergency contact, to check on her well-being.  No threats or demands were made, and none are alleged by Plaintiff.  The call was simply to check on Plaintiff's well-being.  Plaintiff's mother confirmed that Plaintiff was in fact in Stillwater, but provided no additional

---

[2] See demand letter from Plaintiff's counsel, dated January 20, 2017, which was Plaintiff's counsel's first communication with OSU regarding this matter (see Compl. ¶ 62), and specifically the reference on Page 10 stating, "[m]oreover, OSU's recent repeated contacts with Ms. Guillou's mother and Stillwater Police Department to make inquiries have caused Ms. Guillou further anxiety, and such contacts must cease." Defendants include this not for the purpose of converting this Motion to Dismiss into one for Summary Judgment, but simply to advise the Court and opposing counsel that the timeline proffered by Plaintiff is demonstrably untrue (even if it must be considered as true for the purpose of ruling on a Motion to Dismiss).

8

information. To find that a phone call to the parent of a student who has been non-communicative for two months is adverse would discourage institutions from checking on the welfare of students in the future.

When OSU still did not receive any contact from Plaintiff after several more days, those who had worked most closely with Plaintiff, including those in the Office of Equal Opportunity, made the decision to request a welfare check at Plaintiff's residence. Because Plaintiff resided off campus, the request was made to the Stillwater Police Department. Welfare checks are routinely requested when there is fear for the safety and well-being of a student and are not intended to harass or intimidate the student. OSU was simply looking out for the welfare of Plaintiff.

Neither the phone call to Plaintiff's mother nor the phone call to Stillwater Police Department requesting a welfare check would dissuade a reasonable person from engaging in the protected activity. OSU's actions were reasonable in light of the circumstances and do not constitute an adverse action.

Moreover, the Tenth Circuit held that continued pursuit of a remedy following alleged retaliatory action "may shed light as to whether the actions are sufficiently material and adverse to be actionable" noting that the Appellants in the case were not dissuaded from attempting to remedy the perceived discrimination. *Somoza*, 513 F.3d at 1214. As with the Appellants in *Somoza*, Plaintiff was undeterred from pursuing remedial action following each of Defendants' alleged retaliatory actions. Plaintiff continued to work with the OSU Office of Equal Opportunity, engaged legal counsel, and ultimately filed the instant suit. Plaintiff's actions are evidence that the complained of actions were not

9

sufficiently material and adverse to be actionable.

**II.     Plaintiff's claim for disability discrimination under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 should be dismissed for failure to state a claim upon which relief can be granted.**

Claims for disability discrimination require the same elements under both the ADA and Section 504 of the Rehabilitation Act. *Nielsen v. Moroni Feed Co.,* 162 F.3d 604, 608 (10th Cir. 1998). A disability discrimination claim requires Plaintiff to set forth three elements: (1) that she is a qualified individual with a disability; (2) that she was either excluded from participation in or denied some benefit of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of her disability. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016), *citing Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

There are three ways to establish a discrimination claim: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation. *J.V.*, 813 F.3d at 1295. Plaintiff's Complaint does not state which type of claim she alleges.

A claim of disparate impact requires a showing that "a specific policy caused a significant disparate effect on a protected group." *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007). Plaintiff makes no allegation which infers a claim for disparate impact; there is no policy or act which she alleges resulted in a disparate impact on individuals with disabilities. Public entities must provide reasonable accommodations to individuals with disabilities. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007). An allegation of failure to accommodate a request for a reasonable

accommodation is necessary to make a claim under this standard. Plaintiff does not allege that she was not provided with a reasonable accommodation. In fact, she admits that she was provided with the medical leave she requested. Compl. ¶ 24. Because Plaintiff's Complaint does not allege discrimination on the basis of disparate impact or failure to make a reasonable accommodation, Defendants assume her claim is for intentional discrimination.

The Tenth Circuit recognized that "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *J.V.*, 813 F.3d at 1298; *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 12289 (10th Cir. 2009). The Tenth Circuit, along with other circuits, has adopted deliberate indifference as the standard for proving intentional discrimination. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). *See also Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Plaintiff never claims she was denied the benefits of or access to the programs or services provided by OSU. Rather, Plaintiff alleges five purportedly discriminatory actions on the part of Defendants' employees that allegedly resulted in emotional distress. Compl. ¶ 73. None of the five actions alleged by Plaintiff rise to the level of deliberate indifference because no harm to a federally protected right was likely to occur or did occur as a result of the actions.

The comments made by employees of OSU about and to Plaintiff did not result in any negative impact to Plaintiff. The comments left on Plaintiff's voicemail were the

venting of administrative staff members with no ability to impact Plaintiff's status or grades. The alleged "threat" to Plaintiff about the size of the veterinary field and potential problems she may encounter was likewise not impactful on Plaintiff's status, requested accommodation, or grades. Information shared with SMU, as stated above, was necessary to allow SMU to monitor the progress of its students. Even if the information shared was "false" as alleged by Plaintiff, statements that Plaintiff had "family problems" or "issues" can hardly be classified as discriminatory.

The calls made by OSU to Plaintiff's mother and to Stillwater Police Department were to check on the welfare of a student. To hold that these actions constitute discrimination would have a chilling effect and discourage institutions of higher education from checking on the welfare of students in the future.

Plaintiff offers no facts to support her bald allegation that the alleged comments, purported threat, and welfare checks made by OSU were made "because she has a disability." Compl. ¶ 73. Plaintiff attempts to allege discrimination by stating that there is no evidence that these acts happened to other similarly situated students, but offers no facts to support her bare allegations.

Finally, Plaintiff alleges she was discriminated against by OSU's "additional wrongful acts…that [Plaintiff] has not yet discovered, but already occurred in actuating Defendant Kershaw's and Defendant Gilmour's threats." Compl. ¶ 73. Plaintiff cites no facts to support her claim that any such acts have occurred. Plaintiff's allegations are prospective in nature and should be dismissed.

Plaintiff's claim for discrimination is in essence a repeat of the same acts she claims

constitute retaliation, which is a form of intentional discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). Plaintiff's claim for discrimination should be dismissed for the same reasons as her claim for retaliation; it is simply an attempt to reconstitute the same claim on the same deficient factual basis. And necessarily so, as couching these types of acts as intentional discrimination will not withstand judicial scrutiny under the deliberate indifference standard. Plaintiff's claims are so outside the norm of intentional discrimination claims that Defendants were unable to locate cases of alleged intentional discrimination with facts similar to those alleged by Plaintiff.

The bottom line is OSU did not infringe upon Plaintiff's federally protected right to receive a reasonable accommodation. Plaintiff was granted her requested accommodation in a reasonable time and fashion and was not discriminated against by Defendants. Any slights she perceived from Defendants during the process of granting her request were just that – non-actionable mere slights.

## CONCLUSION

Defendants respectfully request this Court dismiss Plaintiff's claims against Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) because she has failed to allege facts sufficient to establish a claim of retaliation or discrimination under Title II of the Americans with Disabilities Act or Section 504 of the Rehabilitation Act.

Respectfully submitted,

/s/ Clinton W. Pratt
Clinton W. Pratt, OBA #21329
Assistant General Counsel
Board of Regents for the Oklahoma
Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Oklahoma State University
Stillwater, OK 74078-7044
(405) 744-6494/Fax: (405) 744-7998
clint.pratt@okstate.edu
ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    R. Jack Freeman
    GRAHAM & FREEMAN, PLLC
    6226 East 101st Street, Suite 300
    Tulsa, Oklahoma 74137-7117

    Jason J. Bach
    7881 W. Charleston Blvd., Suite 165
    Las Vegas, Nevada 89117

    Sean W. Kilian
    Kimberly Williams
    Locke Lord LLP
    2200 Ross Avenue, Suite 2800
    Dallas, TX 75201

    Jeremy Tubb
    Courtney Warmington
    Tiffany Wythe
    Fuller Tubb & Bickford, PLLC
    201 Robert S. Kerr Avenue, Suite 1000
    Oklahoma City, OK 73102

    Margaret McMorrow-Love
    John J. Love
    The Love Law Firm
    228 Robert S. Kerr, Suite 540
    Oklahoma City, OK 73102

                                            /s/ Clinton W. Pratt
                                            Clinton W. Pratt