IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ALEXANDRA GUILLOU,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **NO. CIV-17-988-HE** |
| | § | |
| **BOARD OF REGENTS FOR THE** | § | |
| **OKLAHOMA AGRICULTURAL** | § | |
| **AND MECHANICAL COLLEGES;** | § | |
| **STATE OF OKLAHOMA ex rel.** | § | |
| **OKLAHOMA STATE UNIVERSITY;** | § | |
| **ST. MATTHEWS UNIVERSITY, INC.;** | § | |
| **LUCINDA KERSHAW; DR. DANIEL** | § | |
| **BURBA; DR. CHRIS ROSS; and** | § | |
| **DR. MARGI GILMOUR** | § | |
| | § | |
| **Defendants.** | § | |

ST. MATTHEW'S UNIVERSITY, INC.'S
MOTION TO DISMISS AND BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   MOTION TO DISMISS STANDARD .............................................................. 2

III.  PLAINTIFF FAILS TO PLEAD ESSENTIAL
      ELEMENTS OF HER CLAIMS ......................................................................... 3

      A.    Plaintiff Fails to Plausibly Allege that SMU Is a "Public Entity" Such that
            It Is Subject to Title II of the ADA ............................................................. 3

      B.    Plaintiff Fails to Plausibly Allege that SMU Is a "Public Accommodation"
            Such That It Is Subject to Title III of the ADA ............................................. 4

      C.    Plaintiff Fails to Plausibly Allege that SMU Receives Federal Financial
            Assistance Such It Is Subject to the Rehabilitation Act ............................... 5

IV.   NEITHER THE REHABILITATION ACT NOR TITLE III OF THE
      ADA APPLY EXTRATERRITORIALLY ............................................................ 7

      A.    When a Statute Gives No Clear Indication of Extraterritorial Application,
            Courts Must Presume it Applies Only Domestically ................................... 7

      B.    Plaintiff's Rehabilitation Act Claim Should Be Dismissed Because the
            Rehabilitation Act Does Not Apply Extraterritorially ................................. 8

      C.    Plaintiff's Claim Under Title III of the ADA Should Be Dismissed Because
            Title III of the ADA Does Not Apply Extraterritorially ............................. 11

V.    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT SMU WAS
      "DELIBERATELY INDIFFERENT" TO HARASSMENT ................................ 12

      A.    Plaintiff Fails to State a Claim for Deliberate Indifference Under the
            Rehabilitation Act ....................................................................................... 12

      B.    Plaintiff Fails to State a Claim for Deliberate Indifference Under the ADA 15

            1.    Plaintiff's claim for deliberate indifference under Title II of the
                  ADA should be dismissed because Plaintiff does not allege that
                  SMU had the requisite control over the alleged harassment ........... 15

            2.    To the extent deliberate indifference is a cognizable theory of
                  recovery under Title III of the ADA, such claim should be dismissed
                  because Plaintiff does not allege that SMU had the requisite control
                  over the alleged harassment ............................................................ 16

VI.   BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD
      FAITH AND FAIR DEALING ........................................................................... 18

      A.    Plaintiff's Breach of Contract Claim Should Be Dismissed ...................... 19

            1.    The terms of the alleged contract are too vague to form a contract . 19

2.    Plaintiff fails to plausibly allege that SMU breached a contract because she fails to plausibly allege an "applicable law" for purposes of the anti-discrimination statement..................................................20

B.    Plaintiff's Breach of Covenant of Good Faith and Fair Dealing Claims Should Be Dismissed....................................................................................21

VII.   CONCLUSION ......................................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdus-Sabur v. Hope Vill., Inc.,*
   221 F. Supp. 3d 3 (D.D.C. 2016) ................................................................... 6

*Access Endocrine, Diabetes, & Thyroid Ctr., P.C. v. Health Care Serv.*
   *Corp.*, No. CIV-14-441-C, 2014 WL 4385760 (W.D. Okla. Sept. 4,
   2014) ........................................................................................................... 22

*Archut v. Ross Univ. Sch. of Veterinary Med.,*
   No. CIV.A. 10-1681 MLC, 2012 WL 5867148 (D.N.J. Nov. 19, 2012),
   *aff'd*, 580 F. App'x 90 (3d Cir. 2014) ............................................... 9, 10, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. 3, 6

*Barber ex rel. Barber v. Colorado Dep't of Revenue,*
   562 F.3d 1222 (10th Cir. 2009) ..................................................................... 5

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................. 2, 3, 6

*Butler v. Capitol Fed. Sav.,*
   904 F. Supp. 1230 (D. Kan. 1995) ................................................................. 6

*Davis v. Monroe County Board of Education,*
   526 U.S. 629 (1999) ........................................................................... *passim*

*Doe v. Oklahoma City Univ.,*
   406 F. App'x 248 (10th Cir. 2010) .......................................................... 5, 17

*Downs v. Novartis Pharm. Corp.,*
   No. 09-CV-0228-CVE-PJC, 2009 WL 1939832 (N.D. Okla. July 7,
   2009) ..................................................................................................... 19, 20

*Ellison v. Roosevelt Cty. Bd. of Cty. Commissioners,*
   No. 16-2270, 2017 WL 2963382 (10th Cir. July 12, 2017) ....................... 18

*Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma,*
   693 F.3d 1303 (10th Cir. 2012) ................................................................... 16

*Embry v. Innovative Aftermarket Sys. L.P.*,
    2010 OK 82, 247 P.3d 1158 ................................................................................. 22

*Erikson v. BP Expl. & Prod. Inc.*,
    567 F. App'x 637 (10th Cir. 2014) ....................................................................... 19

*Greenrock v. Whirlpool Corp.*,
    No. 08-CV-404-TCK-TLW, 2009 WL 1149486 (N.D. Okla. Apr. 28,
    2009) ...................................................................................................................... 20

*Dorsey on behalf of J.D. v. Pueblo Sch. Dist. 60*
    215 F. Supp. 3d 1082 (D. Colo. 2016) ............................................................ 12, 13

*Kodatt v. Oklahoma City University*,
    No. CIV-08-477-R (W.D. OK Jan. 22, 2010 ........................................................ 17

*Lewis v. Burger King*,
    361 F. App'x 937 (10th Cir. 2010) ....................................................................... 17

*Meng-Lin Liu v. Siemens A.G.*,
    978 F. Supp. 2d 325 (S.D.N.Y. 2013), *aff'd sub nom. Liu Meng-Lin v.
    Siemens AG*, 763 F.3d 175 (2d Cir. 2014) ............................................................. 8

*Morman v. Campbell Cty. Mem'l Hosp.*,
    632 F. App'x 927 (10th Cir. 2015) ..................................................................... 2, 3

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ............................................................................... 7, 8, 9, 11

*Muhammad v. Hall*,
    674 F. App'x 810 (10th Cir. 2017) ..................................................................... 2, 3

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*,
    186 F.3d 1238 (10th Cir. 1999) ........................................................................... 14

*Profita v. Regents of the Univ. of Colorado*,
    No. 17-1127, 2017 WL 4534758 (10th Cir. Oct. 11, 2017) ................................... 4

*Purcell v. Tulane Univ. of Louisiana*,
    No. CV 16-1834, 2016 WL 6649220 (E.D. La. Nov. 10, 2016) ............................ 6

*Ryan v. Shawnee Mission U.S.D.*
    512, 416 F. Supp. 2d 1090 (D. Kan. 2006) ........................................................... 6

*Schrader v. Fred A. Ray, M.D., P.C.*,
    296 F.3d 968 (10th Cir. 2002) ............................................................................... 5

*Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty.*,
    Okla., 960 F. Supp. 2d 1254 (N.D. Okla. 2013) ............................................... 13, 14, 16

*Tsotaddle v. Absentee Shawnee Housing Authority*,
    20 P.3d 153 (Okla. Civ. App. 2000) .......................................................................... 20

*Wathor v. Mut. Assur. Adm'rs, Inc.*,
    2004 OK 2, 87 P.3d 559 ............................................................................................. 21

**Statutes**

Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*) ....... 2, 3, 4, 16

Title III of the Americans with Disabilities Act (42 U.S.C. § 12182 *et seq.*) ............ 2, 3, 5

The Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq.*) .......................... 2, 3, 5, 8, 14, 15

Title IX of the Edcuation Amendments of 1972 (20 U.S.C. § 1681 *et seq.*) ................... 14

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................. 1, 2

**ST. MATTHEW'S UNIVERSITY, INC.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant St. Matthew's University, Inc. ("SMU") respectfully requests that this Court dismiss each of Plaintiff Alexandra Guillou's ("Plaintiff") causes of action against SMU for failure to state a claim upon which relief can be granted.   In support of this Motion, SMU respectfully shows the Court as follows:

## I.      INTRODUCTION

SMU is a school of veterinary medicine located in the Cayman Islands.  Following the Basic Science portion of SMU's veterinary program, SMU students complete clinical rotations at veterinary schools located in the United States and Canada, including the Oklahoma State University Center for Veterinary Health Sciences ("CVHS").  Plaintiff is a former SMU student who matriculated to SMU in 2011 and attended its veterinary program in the Cayman Islands.  Thereafter, Plaintiff moved to Oklahoma to participate in clinical rotations at CVHS during Fall 2016.  Plaintiff alleges she began to experience medical problems and harassment based on her alleged disability while attending CVHS.

Although Plaintiff advances a number of legal theories against SMU, Plaintiff's claims stem from her allegation that SMU was "deliberately indifferent" to the alleged disability-based harassment that Plaintiff allegedly suffered while studying at CVHS.  As discussed in detail herein, the Complaint does not plead facts sufficient to state a legally cognizable claim for relief against SMU:

- Plaintiff fails to allege that SMU is a "public entity" or a "public accommodation" such that Title II or Title III of the Americans with Disabilities Act ("ADA") applies to SMU.

- Plaintiff fails to plausibly allege that SMU receives federal financial assistances such that the Rehabilitation Act of 1973 (29 U.S.C. 794) (the "Rehabilitation Act")  applies to SMU.

- Neither the Rehabilitation Act nor Title III of the ADA applies extraterritorially, and Plaintiff fails to plausibly allege that any conduct by SMU took place in the United States.

- Plaintiff fails to allege that SMU had the authority to control the actions of the alleged harassers, the authority to control the environment in which the alleged harassment occurred, or otherwise to take remedial action such that SMU could be liable under a "deliberate indifference" theory of recovery.

- Plaintiff fails to plausibly allege the existence of a contract between SMU and herself, fails to plausibly allege breach of a contract, and fails to allege a "special relationship" between SMU and herself such that SMU could be liable in tort for breach of covenant of good faith and fair dealing.

Accordingly, the Court should grant SMU's Motion.

## II.    MOTION TO DISMISS STANDARD

Plaintiff's causes of action against SMU should be dismissed because they do not state a claim upon which relief can be granted.  To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 931 (10th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient" to state a plausible claim to relief. *Morman*, 632 F. App'x at 931 (quoting *Twombly*, 550 U.S. at 555).  Rather, a complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Muhammad v. Hall*, 674 F. App'x 810, 812 (10th Cir. 2017)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Although courts assume "the veracity of well-pleaded facts," this standard requires a complaint to plead "more than a sheer possibility that a defendant has acted unlawfully." *Morman*, 632 F. App'x at 932; *Hall*, 674 F. App'x at 812.   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Hall*, 674 F. App'x at 812 (quoting *Iqbal*, 556 U.S. at 679).   As set forth below, Plaintiff fails to meet the pleading standard required by *Twombly* and *Iqbal*, and the Court should dismiss her claims accordingly.

### III.   PLAINTIFF FAILS TO PLEAD ESSENTIAL ELEMENTS OF HER CLAIMS

Plaintiff's Complaint lacks plausible allegations that SMU is a "public entity," a "public accommodation," or that it receives "federal financial assistance."   Such facts are essential elements of claims under Title II of the ADA, Title III of the ADA, and the Rehabilitation Act, respectively.   Accordingly, the Court should dismiss such claims for failure to state a claim upon which relief can be granted.

**A.   Plaintiff Fails to Plausibly Allege that SMU Is a "Public Entity" Such that It Is Subject to Title II of the ADA**

Plaintiff's Third Cause of Action alleges SMU violated Title II of the ADA. Compl. at 21.   However, Title II of the ADA does not apply to corporations such as SMU.  42 U.S.C. §§ 12131, 12132.  Rather, Title II of the ADA prohibits discrimination by a "public entity," which is defined primarily as a "State or local government" or an

instrumentality thereof.[1]  *Id.*; *see Profita v. Regents of the Univ. of Colorado*, No. 17-1127, 2017 WL 4534758, at *2 (10th Cir. Oct. 11, 2017) ("Title II of the ADA prohibits public entities from" discriminating on account of disability).

The Complaint's sole allegation as to the ADA's alleged application to SMU is the conclusory statement that "SMU is subject to the mandate of the ADA."  Compl. ¶ 81.  However, Plaintiff does not, and cannot, plausibly allege that SMU is a public entity within the meaning of 42 U.S.C. § 12131 such that it is subject to Title II of the ADA.  Indeed, it is irrefutable that SMU is a private educational institution located in the Cayman Islands.  Accordingly, the Court should dismiss any claim against SMU for violation of Title II of the ADA for failure to state a claim upon which relief can be granted.

**B.     Plaintiff Fails to Plausibly Allege that SMU Is a "Public Accommodation" Such That It Is Subject to Title III of the ADA**

Plaintiff does not specifically plead a cause of action under Title III of the ADA, and the Complaint does not mention Title III.  *See* Compl.  However, to the extent the Complaint can be read as asserting a claim under Title III of the ADA, such claim should be dismissed because Plaintiff does not plausibly allege that SMU is a public accommodation.

As applicable here, Title III of the ADA prohibits certain public accommodations from discriminating against individuals on the basis of disability:

---

[1] "Public entity" is defined to also include the National Railroad Passenger Corporation and any "commuter authority."  42 U.S.C. § 12131(C).

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a); *see Doe v. Oklahoma City Univ.*, 406 F. App'x 248, 250 (10th Cir. 2010) ("Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation").  Plaintiff does not allege that SMU owns, leases, or operates a place of public accommodation within the meaning of Title III of the ADA. Accordingly, to the extent the Complaint asserts a claim against SMU for relief under Title III of the ADA, the Court should dismiss any such claim for failure to state a claim upon which relief can be granted.

**C.      Plaintiff Fails to Plausibly Allege that SMU Receives Federal Financial Assistance Such It Is Subject to the Rehabilitation Act**

The Court should dismiss Plaintiff's Rehabilitation Act claim against SMU because she does not—and cannot—plausibly allege that SMU receives federal financial assistance.  Receipt of federal financial assistance is a *prima facie* element of a claim under the Rehabilitation Act.  *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) ("To establish a prima facie claim under § 504, a plaintiff must demonstrate that . . . the program receives federal financial assistance . . ."); *see also*, *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 974 (10th Cir. 2002) ("the Rehabilitation Act's coverage extends only to entities that choose to receive federal assistance").

Even before the United States Supreme Court's rulings in *Twombly* and *Iqbal*, at least one court within the Tenth Circuit granted a Rule 12(b)(6) motion where the plaintiff failed to adequately allege that the defendant received federal financial assistance.[2]  *See Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1233 (D. Kan. 1995) (plaintiff could not state a claim under Title VI of the Civil Rights Act of 1964 against savings and loan where sole allegation of receipt of federal financial assistance was that savings and loan's customer's accounts were federally insured).  Moreover, Plaintiff has not alleged—and cannot plausibly allege—that SMU is the type of entity that obviously receives federal funds, such that her failure in pleading could be characterized as a technical defect.  *See, e.g., Ryan v. Shawnee Mission U.S.D.* 512, 416 F. Supp. 2d 1090, 1097 (D. Kan. 2006) (public school district's motion to dismiss Rehabilitation Act claim on grounds plaintiff failed to allege receipt of federal financial assistance denied where court found it is generally accepted that public schools receive federal funds).

The Complaint contains a single conclusory allegation, with no supporting factual predicate regarding SMU's alleged receipt of federal financial assistance: SMU "receives federal financial assistance."  Compl. at ¶ 81.  Such allegation is a purely speculative and formulaic recitation of the statutory language of the Rehabilitation Act, pleaded as an

---

[2] Likewise, courts in other jurisdictions have granted motions to dismiss where the plaintiff did not plausibly allege the defendant received federal financial assistance. *See, e.g.*, *Abdus-Sabur v. Hope Vill., Inc.*, 221 F. Supp. 3d 3, 13 (D.D.C. 2016) ("threadbare allegations" that defendant received federal financial assistance stopped "short of the line between possibility and plausibility of entitlement of relief"); *Purcell v. Tulane Univ. of Louisiana*, No. CV 16-1834, 2016 WL 6649220, at *4 (E.D. La. Nov. 10, 2016) (dismissing Rehabilitation Act claim for failure to allege receipt of federal financial assistance where complaint contained "nothing more than a recitation of the statutory language of the Rehabilitation Act").

afterthought under the heading alleging SMU violated Title II of the ADA.  Under federal pleading standards, such allegation is insufficient to show an entitlement to relief. Accordingly, the Court should dismiss Plaintiff's causes of action against SMU for violations of the Rehabilitation Act.

## IV.   NEITHER THE REHABILITATION ACT NOR TITLE III OF THE ADA APPLY EXTRATERRITORIALLY

To the extent the Complaint alleges causes of action against SMU for violations of the Rehabilitation Act or Title III of the ADA (which it does not), the Court should alternatively dismiss such claims because the Rehabilitation Act and Title III of the ADA do not contain language clearly indicating Congress intended such laws to apply extraterritorially.  Critically, Plaintiff's Complaint fails to plausibly allege that any conduct of SMU took place in the United States, rather than the Cayman Islands.  Such failure goes to the heart of this matter and requires dismissal of all of Plaintiff's claims against SMU under the Rehabilitation Act and Title III of the ADA.

### A.   When a Statute Gives No Clear Indication of Extraterritorial Application, Courts Must Presume it Applies Only Domestically

The United States Supreme Court has found "[i]t is a 'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)).  The *Morrison* court used a textual analysis to determine that section 10(b) of the Securities Exchange Act of 1934 did not apply extraterritorially. *Id*. at 265.  Moreover, it determined that the question of whether a federal statute reaches

extraterritorial conduct is a "merits question," which may be resolved on a motion to dismiss. *Id*. at 255 (affirming dismissal of complaint over extraterritorial conduct for failure to state a claim on which relief can be granted); *see also*, *Meng-Lin Liu v. Siemens A.G*, 978 F. Supp. 2d 325 (S.D.N.Y. 2013), *aff'd sub nom. Liu Meng-Lin v. Siemens AG.*, 763 F.3d 175 (2d Cir. 2014) (granting motion to dismiss complaint alleging extraterritorial conduct for failure to state a claim on which relief can be granted).

The Court held that in the absence of a clear and affirmative expression from Congress that a statute is intended to apply extraterritorially, courts "must presume it is primarily concerned with domestic conditions." *Morrison*, 561 U.S. at 255. Simply stated, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id*. As applicable here, and in accordance with the principles of *Morrison*, neither the Rehabilitation Act nor Title III of the ADA apply extraterritorially.

**B.   Plaintiff's Rehabilitation Act Claim Should Be Dismissed Because the Rehabilitation Act Does Not Apply Extraterritorially**

The Rehabilitation Act does not apply extraterritorially because it contains no clear indication of extraterritorial application. The Rehabilitation Act provides in relevant part:

> No otherwise qualified individual with a disability <u>in the United States</u>, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a) (emphasis added).

In *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. CIV.A. 10-1681 MLC, 2012 WL 5867148 (D.N.J. Nov. 19, 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014), the plaintiff, a former veterinary student at the defendant's veterinary school located in St. Kitts, alleged disability discrimination under the Rehabilitation Act and Title III of the ADA. In granting summary judgment to the defendant, the court applied the United States Supreme Court's analysis in *Morrison v. Nat'l Australia Bank Ltd.* in analyzing the text of the Rehabilitation Act to determine whether it applied to the extraterritorial conduct of a foreign educational institution. *Id.* at *4. The *Archut* court found that the Rehabilitation Act is concerned with "two intertwining policies: protection of disabled individuals and responsibilities attendant on acceptance of federal financial aid." *Id.* at *9 (citing 29 U.S.C. § 794). However, *Archut* recognized that neither policy should be understood as justifying extraterritorial application.

First, the Rehabilitation Act protects disabled individuals by targeting "discriminatory decision-making," *i.e.*, acts that "constitute exclusionary or accommodating decisions." *Id.* "[T]he *location of the actor when such decisions are made is important*" because the text of the Rehabilitation Act "does not mention that these protections extend abroad, not does it require foreign schools with American students or American-provided financial assistance to give disabled individuals the same accommodation." *Id.* (emphasis added). In *Archut*, because all decisions about the plaintiff's accommodation were made in St. Kitts, the court found that the defendant could not be liable for any alleged violations of the Rehabilitation Act. *Id.* at *1, *10.

Second, the Rehabilitation Act establishes the responsibility of certain institutions that receive federal financial assistance not to discriminate on the basis of disability. *Id.* at \*9 (citing 29 U.S.C. § 794). However, the text of the Rehabilitation Act does not contain a clear, affirmative communication of Congressional intent for its provisions to apply to institutions abroad. *Archut*, 2012 WL 5867148 at \*9. Specifically, and as the *Archut* court found, the Rehabilitation Act's prohibition of discrimination by "'any program or activity receiving Federal financial assistance' is not a clear communication indicating that Congress" intended the Rehabilitation Act to apply abroad. *Id.* at \*10. Absent such an expression of intent, "it cannot be implied that Congress actually intended such extraterritorial application." *Id.*

Here, the Complaint alleges that SMU is located in the Cayman Islands. Compl. ¶ 14. The Complaint also generally alleges that "Defendants'" actions,[3] as alleged in the Complaint, took place in Payne County, Oklahoma. Compl. ¶ 8. Aside from these general and contradictory allegations, the Complaint does not specifically allege where SMU or its personnel were located when their alleged conduct occurred. As a result, the Complaint fails to plausibly allege that any conduct of SMU took place in United States, rather than the Cayman Islands. Likewise, Plaintiff's allegation that SMU receives federal financial assistance is insufficient to bring SMU's alleged conduct within the

---

[3] As used in the Complaint, it is unclear whether the capitalized term "Defendants," which is not defined by the Complaint, refers to SMU. In fact, the Complaint at times distinguishes between the "Defendants" and SMU. *See, e.g.,* Compl. ¶ 84 ("SMU knew about Defendants' campaign of harassment . . ."); Compl. ¶ 86 ("SMU was deliberately indifferent to Ms. Guillou's harassment by Defendants . . ."). Thus, it is unclear whether the allegation regarding conduct by "Defendants" in Payne County, Oklahoma is an allegation against SMU. Compl. ¶ 8.

purview of the Rehabilitation Act.[4]   Accordingly, Plaintiff's claim should be dismissed because the Rehabilitation Act does not apply extraterritorially.

**C.     Plaintiff's Claim Under Title III of the ADA Should Be Dismissed Because Title III of the ADA Does Not Apply Extraterritorially**

Title III of the ADA does not apply extraterritorially because, like the Rehabilitation Act, Title III of the ADA contains no clear indication of extraterritorial application.[5]   Indeed, Title III of the ADA "provides no indication Congress intended to provide extraterritorial application of [its] standards to foreign institutions offering public accommodations or public transportation."  *Archut*, 2012 WL 5867148 at *11.  Following *Morrison*, the *Archut* court found that "the requirements of the ADA with respect to institutions offering public accommodations do not apply extraterritorially to require foreign institutions to provide reasonable accommodations to American citizens with disabilities."  *Id.* at *12.

As stated above, the Complaint specifically alleges that SMU is located in the Cayman Islands, and generally alleges that "Defendants'" actions[6] took place in Payne County, Oklahoma.  Compl. ¶¶ 14, 8.  Moreover, as stated above, such allegations are insufficient to plausibly allege that any conduct of SMU took place in United States, rather than the Cayman Islands.  Accordingly, because the requirements of Title III of the

---

[4] As explained in Section III(C) above, Plaintiff's allegation that SMU receives federal financial assistance is not plausible, and dismissal of Plaintiff's Rehabilitation Act claims against SMU is warranted for this reason alone.

[5] As set forth in Section III(B) above, Plaintiff's claims under Title III of the ADA should be dismissed because Plaintiff does not allege SMU is a "public accommodation."

[6] As stated in footnote 3 above, it is unclear whether the allegation regarding conduct by "Defendants" in Payne County, Oklahoma is an allegation against SMU.

ADA do not apply extraterritorially, Plaintiff's claim under Title III of the ADA should be dismissed.

## V.     PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT SMU WAS "DELIBERATELY INDIFFERENT" TO HARASSMENT

Assuming *arguendo* that the requirements of the Rehabilitation Act and the ADA apply to SMU, which as set forth above they do not, Plaintiff fails to allege a legitimate theory of recovery against SMU.[7]  Plaintiff claims that SMU violated the Rehabilitation Act and the ADA because SMU was aware that Plaintiff was allegedly harassed by third parties, and was "deliberately indifferent" thereto.   Compl. ¶¶ 86-87.   However, Plaintiff's "deliberate indifference" claims should be dismissed because she has not plausibly alleged that SMU had the requisite control over the alleged harassment.

### A.     Plaintiff Fails to State a Claim for Deliberate Indifference Under the Rehabilitation Act

Plaintiff's claim for deliberate indifference under the Rehabilitation Act should be dismissed because Plaintiff does not allege that SMU had the authority to control the harassment she allegedly experienced.   Courts within the Tenth Circuit that have recognized claims under the Rehabilitation Act for deliberate indifference to harassment of the plaintiff at the hands of a third party have done so only within the boundaries of *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).  *See Dorsey on behalf of J.D. v. Pueblo Sch. Dist. 60*, 215 F. Supp. 3d 1082, 1088-1089 (D. Colo. 2016)

---

[7] As set forth in Section III above, Plaintiff's claims against SMU under Title II of the ADA, Title III of the ADA, and the Rehabilitation Act should be dismissed because Plaintiff fails to allege essential elements of such claims.  Additionally, as set forth in Section IV above, Plaintiff's claims against SMU under the Rehabilitation Act and Title III of the ADA should be dismissed because such laws do not apply extraterritorially.

(allowing Rehabilitation Act claim for disability-based student-on-student harassment to proceed under *Davis* standard); *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty.*, Okla., 960 F. Supp. 2d 1254, 1267 (N.D. Okla. 2013) (allowing claims under Rehabilitation Act and Title II of the ADA for disability-based student-on-student harassment to proceed under *Davis* standard).

In *Davis*, the Court determined the circumstances under which a recipient of federal education funding may be liable for damages, under Title IX of the Education Amendments of 1972 ("Title IX"), for its deliberate indifference to known acts of student-to-student sexual harassment.  *Davis*, 526 U.S. at 648.  In doing so, the Court recognized the importance of the identity of the alleged harasser and the environment in which the harassment occurred.  Specifically, it found that the "language of Title IX narrowly circumscribe[s] the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of funding recipients."  *Id*. at 644.  Further, it held that:

> Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. <u>A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action</u>.

*Id*. (emphasis added).

In so holding, the Court again looked to the plain language of Title IX, finding that it "confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."  *Id*.  Title IX provides, in relevant part, that:

> No person in the United States shall, on the basis of sex, be
> excluded from participation in, be denied the benefits of, or
> be subjected to discrimination under any education program
> or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681(a).  In turn, Title IX defines a "program or activity" to mean "all of the

operations of" certain institutions.  20 U.S.C. § 1687.  Accordingly, the Court reasoned

that Title IX imposes confines on the scope of conduct it prohibits because it requires that

"the harassment must occur '*under' the operations of* a funding recipient."  *Davis,* 526

U.S. at 645 (citing 20 U.S.C. §§ 1681(a), 1687) (emphasis added).  Indeed, in deliberate

indifference claims, the Tenth Circuit has required a showing of deliberate indifference

on the part of a school official with "substantial control" over alleged harassment, such as

one with the authority to transfer an alleged harasser to a different class, impose a

suspension, curtail privileges, or provide additional supervision.  *See Murrell v. Sch. Dist.

No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999).

As applicable here, the text of the Rehabilitation Act is substantially similar to

Title IX.  *See Sutherlin*, 960 F. Supp. 2d at 1266-1267 (applying *Davis* deliberate

indifference standard to Rehabilitation Act claim and recognizing that "Title IX shares

similarities to language found in [the Rehabilitation Act]").  The Rehabilitation Act

provides that:

> No otherwise qualified individual with a disability in the
> United States, as defined in section 705(20) of this title, shall,
> solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving
> Federal financial assistance . . .

29 U.S.C. § 794(a).  Likewise, the Rehabilitation Act defines a "program or activity" to mean "all of the operations of" certain institutions.  29 U.S.C. § 794(b).  Thus, the Rehabilitation Act, like Title IX, confines the scope of conduct it prohibits to that which occurs under the operations of an entity receiving federal financial assistance.

As the foregoing authorities demonstrate, the identities of the alleged harassers are important in deliberate indifference cases, as is the location in which the alleged harassment occurred.  In the Complaint, Plaintiff alleged she experienced harassment by other defendants or their employees in Payne County, Oklahoma – not by SMU and not in the Cayman Islands.  *See, e.g.*, Compl. ¶¶ 8, 82-86.  Critically, she does not—and cannot—allege that SMU had the authority to control the actions of the alleged harassers, the authority to control the environment in which the alleged harassment occurred, or otherwise to take remedial action.  Deliberate indifference makes sense as a theory of recovery only where the defendant has "control over the alleged harassment."  *Davis*, 526 U.S. at 644.  Because Plaintiff fails to plausibly allege that SMU had any degree of control over the harassment she allegedly experienced, she has failed to state a claim for deliberate indifference and her Rehabilitation Act claim should be dismissed.

**B.      Plaintiff Fails to State a Claim for Deliberate Indifference Under the ADA**

1.      Plaintiff's claim for deliberate indifference under Title II of the ADA should be dismissed because Plaintiff does not allege that SMU had the requisite control over the alleged harassment.

Plaintiff's claims for deliberate indifference under Title II of the ADA should likewise be dismissed.  As stated above, only one court within the Tenth Circuit has recognized a claim under Title II of the ADA for deliberate indifference to disability-

based student-on-student within the *Davis* framework.  *Sutherlin*, 960 F. Supp. 2d at 1266-1267 (applying *Davis* deliberate indifference standard to claim under Title II of the ADA and recognizing that "Title IX shares similarities to language found in the ADA"). Title II of the ADA provides that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Unlike Title IX and the Rehabilitation Act, Title II of the ADA does not specifically define "programs, or activities," suggesting that for purposes of the *Davis* standard, it imposes narrower confines on the scope of conduct which it prohibits.[8] Regardless, and in accordance with the argument set forth in Section V(A) above, Plaintiff fails to state a claim for deliberate indifference under Title II of the ADA because she does not—and cannot—allege that SMU had the authority to control the actions of the alleged harassers, the authority to control the environment in which the alleged harassment occurred, or otherwise to take remedial action.  Accordingly, the Court should dismiss such claims.

2.    <u>To the extent deliberate indifference is a cognizable theory of recovery under Title III of the ADA, such claim should be dismissed because Plaintiff does not allege that SMU had the requisite control over the alleged harassment.</u>

---

[8] *See Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1307 (10th Cir. 2012) (noting that Title IX and the Rehabilitation Act define "program or activity" to mean "all of the operations," and that lack of such definition in Title II of the ADA "strongly suggests a different meaning").

Plaintiff's claims for deliberate indifference under Title III of the ADA should likewise be dismissed.[9]  Deliberate indifference is a theory of intentional discrimination through which a plaintiff may recover damages.  *Davis*, 526 U.S. at 643.  However, monetary damages are unavailable for violations of Title III of the ADA.  *See Lewis v. Burger King*, 361 F. App'x 937, 938 n.1 (10th Cir. 2010) (for violations of Title III, plaintiff may obtain injunctive relief only).  Moreover, "[a] claim for injunctive relief under Title III of the ADA … is not dependent upon a showing of discriminatory intent." *Doe v. Oklahoma City Univ.*, 406 F. App'x 248, 252 (10th Cir. 2010).

In *Doe*, the Tenth Circuit reviewed the district court's grant of summary judgment to the defendant.  In the district court's order granting summary judgment, it applied the deliberate indifference standard under Title II of the ADA to the plaintiff's claims under Title III of the ADA, due to the similarities between Title II and Title III.  *Kodatt v. Oklahoma City University*, No. CIV-08-477-R (W.D. OK Jan. 22, 2010), ECF No. 75 at 7 (attached hereto as Ex. 1).  The Tenth Circuit held this was error because Title III of the ADA does not require a showing of wrongful intent.  *Doe*, 406 F. App'x at 252.

The holdings in *Davis* and *Doe* demonstrate that deliberate indifference to harassment under Title III of the ADA is not a cognizable legal theory upon which relief

---

[9] As stated in Section III(B) above, Plaintiff does not specifically plead a cause of action under Title III of the ADA.  Nevertheless, out of an abundance of caution, SMU addresses the viability of the deliberate indifference theory in such a cause of action.

can be granted.   Accordingly, to the extent Plaintiff pleads such claim, it should be dismissed.[10]

## VI.      BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

In Plaintiff's Fourth Cause of Action, she alleges she had a contract with SMU, "[s]ome of the terms of" which are found in the SMU Catalog and in application forms provided by SMU.   Compl. ¶ 93; *see* Ex. 2 (the SMU Catalog) and Ex. 3 (Plaintiff's Application for Admission) (the "Application").[11]   In Plaintiff's Fifth Cause of Action, she alleges that because SMU breached its alleged contract with Plaintiff, it likewise breached its covenant of good faith and fair dealing.   As set forth below, Plaintiff's claims for breach of contract and breach of covenant of good faith and fair dealing should be dismissed for failure to state a claim upon which relief can be granted.

---

[10] Alternatively, should the Court determine that the deliberate indifference standard under Title II of the ADA applies to Plaintiff's claims under Title III of the ADA, and in accordance with the argument set forth in Sections VA and V(B)(1) above, Plaintiff fails to state a claim for deliberate indifference under Title III of the ADA because she does not—and cannot—allege that SMU had the authority to control the actions of the alleged harassers, the authority to control the environment in which the alleged harassment occurred, or otherwise to take remedial action.   Accordingly, the Court should dismiss such claims.

[11] Plaintiff does not attach to her Complaint the documents that she alleges form a contract between SMU and herself.   However, on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court may consider documents that the Plaintiff refers to in her complaint.   *Ellison v. Roosevelt Cty. Bd. of Cty. Commissioners*, No. 16-2270, 2017 WL 2963382, at n.3 (10th Cir. July 12, 2017) ("In ruling on a 12(b)(6) motion, in addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") (internal quotation marks omitted).

**A.      Plaintiff's Breach of Contract Claim Should Be Dismissed**

Plaintiff's breach of contract claim should be dismissed because she does not plausibly allege the existence or breach of a contract between herself and SMU.   For Plaintiff's breach of contract claim to survive a motion to dismiss, she must plead facts that create a reasonable inference that there was a contract between herself and SMU, and that SMU breached that contract.   *Erikson v. BP Expl. & Prod. Inc.*, 567 F. App'x 637, 639 (10th Cir. 2014).

1.      <u>The terms of the alleged contract are too vague to form a contract.</u>

Plaintiff's alleges that "[s]ome of the terms" of her alleged contract with SMU come from application forms and the SMU Catalog, including the following statement:

> No person shall be excluded from participation in, denied benefits of, or be subject to discrimination under any program or activity sponsored or conducted by St. Matthew's University, on any basis prohibited by applicable law, including, but not limited to, race, color, national origin, sex, age, or handicap.

Compl. ¶¶ 93, 95.   As established below, the foregoing anti-discrimination statement, which appears in Plaintiff's Application, is too vague to form an implied contract between Plaintiff and SMU.  <u>Ex. 3</u> at 3.

In the analogous context of implied contracts based on an employee manual, Oklahoma law prohibits vague statements from supporting a breach of contract claim.   In *Downs v. Novartis Pharm. Corp.*, No. 09-CV-0228-CVE-PJC, 2009 WL 1939832, at *4 (N.D. Okla. July 7, 2009), the plaintiff alleged that the defendant's code of conduct constituted a "significant part" of an employment contract between the parties, that the

code of conduct "promises not to retaliate against employees who report misconduct," and that the defendant breached the contract when it retaliated against the plaintiff.  In dismissing the plaintiff's claim for breach of contract to the extent it was based on the code of conduct, the court found that the promise not to "retaliate" is a "vague assurance" that "cannot form the basis of a claim for breach of implied contract."  *Id.*[12]

In this case, the anti-discrimination statement from Plaintiff's Application is too vague to support a breach of contract claim.   Although Plaintiff characterizes the statement as a promise by SMU, nothing in the statement—which falls under the heading of the applicant's "Certification Statement"—indicates an intent to be contractually bound, nor does it identify the party that shall not subject persons to discrimination.  *See* Ex. 3 at 3.  As such, it is too vague to form the basis of a claim for breach of contract.  To the extent Plaintiff alleges breach of contract based on the anti-discrimination statement in the Application, her claim should be dismissed.

> 2.   Plaintiff fails to plausibly allege that SMU breached a contract because she fails to plausibly allege an "applicable law" for purposes of the anti-discrimination statement.

Should the Court determine that Plaintiff plausibly alleges the anti-discrimination statement in the Application forms a contract, Plaintiff has not plausibly alleged breach of such contract.   Plaintiff alleges breach in that SMU allegedly permitted "its affiliate

---

[12] *See also*, *Greenrock v. Whirlpool Corp.*, No. 08-CV-404-TCK-TLW, 2009 WL 1149486, at *2 (N.D. Okla. Apr. 28, 2009) (dismissing claim based on allegation that employee handbook created implied contract to treat plaintiff with "dignity and respect," finding any such assurance in employee handbook was "at most a vague assurance that is not enforceable as an implied contract"); *Tsotaddle v. Absentee Shawnee Housing Authority*, 20 P.3d 153, 158 (Okla. Civ. App. 2000) (promise in handbook or policy must be in "definite terms," not "vague assurances").

school to discriminate against [her] on the basis of her disability, which was in violation of the applicable laws in the state of Oklahoma and in the United States, and thus in violation of SMU's contract" with Plaintiff.  Compl. ¶ 95.

The anti-discrimination statement cannot plausibly be construed as SMU undertaking a promise to prevent affiliate schools or other third parties from discriminating against Plaintiff.  Moreover, Plaintiff does not allege that CVHS is a "program or activity sponsored or conducted by" SMU such that the anti-discrimination statement applies to conduct in Oklahoma.  Ex. 3 at 3.  Even if the anti-discrimination statement can be read as applying at CVHS, Plaintiff's allegation is that SMU breached the alleged contract by permitting its affiliate school to discriminate against her in violation of Oklahoma and federal law.  Compl. ¶ 95.  However, as set forth in detail in Sections III, IV, and V above, Plaintiff has not plausibly alleged that a federal law anti-discrimination law is applicable to SMU.  Additionally, Plaintiff does not allege a violation of any specific Oklahoma anti-discrimination law.  Accordingly, Plaintiff has not plausibly alleged a breach of contract and her claim should be dismissed.

**B.    Plaintiff's Breach of Covenant of Good Faith and Fair Dealing Claims Should Be Dismissed**

Plaintiff's claims for breach of covenant of good faith and fair dealing should be dismissed because Plaintiff does not plausibly allege the existence of a contract or a "special relationship" between herself and SMU.  The Oklahoma Supreme Court has found that "[e]very contract in Oklahoma contains an implied duty of good faith and fair dealing."  *Wathor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559, 561.

However, under Oklahoma law, tort liability for breach of such duty is primarily limited to "cases between an insurer and its insured because of the special relationship characterized by disparate bargaining power and a noncommercial purpose." *Access Endocrine, Diabetes, & Thyroid Ctr., P.C. v. Health Care Serv. Corp.*, No. CIV-14-441-C 2014 WL 4385760, at *3 (W.D. Okla. Sept. 4, 2014). Indeed, the Oklahoma Supreme Court has "expressed reluctance to extend tort recovery for bad faith beyond the insurance field." *Embry v. Innovative Aftermarket Sys. L.P.*, 2010 OK 82, ¶ 6, 247 P.3d 1158, 1160.

As set forth in Section VI(A)(1) above, Plaintiff has not plausibly alleged the existence of a contract between Plaintiff and SMU. Moreover, although Plaintiff's Complaint appears to seek tort damages against SMU, Plaintiff has not alleged a special relationship between Plaintiff and SMU that would support the imposition of tort liability against SMU under Oklahoma law. *See Access Endocrine, Diabetes, & Thyroid Ctr., P.C.*, 2014 WL 4385760, at *3 (dismissing tort-based claim for breach of implied duty of good faith and fair dealing where plaintiff failed to allege facts showing special relationship between the parties). Accordingly, to the extent Plaintiff's claim for breach of covenant of good faith and fair dealing seeks damages for breach of contract, the Court should dismiss such claim because Plaintiff has not plausibly alleged the existence of a contract between Plaintiff and SMU. Likewise, to the extent Plaintiff's claim for breach of covenant of good faith and fair dealing seeks tort damages against SMU, the Court should dismiss Plaintiff's claim for breach of covenant of good faith and fair dealing

because Plaintiff has not plausibly alleged a special relationship between herself and SMU.

**VII.   CONCLUSION**

As a matter of law, the allegations in the Complaint do not state a cognizable claim for relief against SMU.  Accordingly, Plaintiff's claims against SMU should be dismissed.

Respectfully submitted,

_/s/Sean W. Kilian_
Sean W. Kilian, OBA #31117
  skilian@lockelord.com
Kimberly F. Williams, (admitted *pro hac vice*)
  kwilliams@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopier)

and

Jeremy Tubb, OBA#16739
  jeremy.tubb@fullertubb.com
Courtney Warmington, OBA# 18486
  cwarmington@fullertubb.com
Tiffany J. Wythe, OBA #21405
  tiffany.wythe@fullertubb.com
**FULLER TUBB & BICKFORD, PLLC**
201 Robert S. Kerr Avenue, Suite 1000
Oklahoma City, Oklahoma 73102
(405) 235-2575 (Telephone)
(405) 232-8384 (Telecopier)

**ATTORNEYS FOR DEFENDANT
ST. MATTHEW'S UNIVERSITY, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been sent via ECF electronic service, on this 4th day of December, 2017, to the following counsel of record:

| | |
|---|---|
| R. Jack Freeman | Margaret McMorrow-Love |
| jfreeman@grahamfreeman.com | mml@lovelawfirm.legal |
| Jason J. Bach | John L. Love |
| jbach@bachlawfirm.com | jjl@lovelawfirm.legal |
| Clinton W. Pratt | Stephen R. Stephens |
| clint.pratt@okstate.edu | steve.stephens@okstate.edu |

<u>/s/Sean W. Kilian</u>