# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELLY KODATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-08-477-R |
| ) | |
| OKLAHOMA CITY UNIVERSITY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendants Oklahoma City University, Oklahoma City University School of Law and the Board of Trustees of Oklahoma City University have moved for summary judgment on the Complaint of Shelly Kodatt. Doc. No. 37. Plaintiff has filed her response and objection to Defendants' motion [Doc. No. 52] and Defendants have filed a reply [Doc. No. 61]. The Court now addresses Defendants' motion.

In support of their motion directed to Plaintiff's claims for alleged disability discrimination in violation of Title III of the Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., specifically 42 U.S.C. § 12182, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, Defendants argue, based upon assertedly undisputed facts, that Plaintiff was not "otherwise qualified" to be a law student at OCU and that Plaintiff cannot establish that OCU acted with a discriminatory motive. With regard to its first argument, Defendants point out that during her two tenures at OCU Law School, the Plaintiff was never able to maintain a cumulative grade point above



4.50, the minimum required by the OCU School of Law Student Handbook ("Handbook") and that although Plaintiff's claims are "narrowly confined to her complaints about her grade in Professor Spivack's Fall 2005 Legal Profession class," Defendants' Brief at p. 15, with which Plaintiff now expressly agrees, prior to the Fall 2005 semester, Kodatt had two full-time semesters and two part-time semesters in which she was unable to maintain the requisite grade point minimum of 4.50.

Plaintiff in response first suggests that she was otherwise qualified to meet OCU's minimum academic standard if she was afforded reasonable accommodation, which she was denied. *See* Plaintiff's Brief at p. 12 ("She requested reasonable accommodations which were denied."). However, there is no evidence before the Court of any request for accommodation by Plaintiff which was denied by OCU. Indeed, the evidence is uncontroverted that the accommodations which Plaintiff requested – first 50 percent extra time to take her examinations and a separate, quiet environment in which to take her exams and later 100 percent extra time as well as the separate quiet exam place – were granted to the Plaintiff by OCU. She also argues that she "never benefitted from accommodations since she was forced to take the 2005 Fall semester examinations in a manner which denied her an equal opportunity to pass the examinations as individuals without disabilities, Plaintiff's Brief at p. 3, apparently alluding to the fact that the amount of time which Plaintiff utilized to complete her examinations was noted on ExamSoft cover sheets of the 2005 Fall semester examinations. However, Plaintiff has admitted that the only examination on which she was graded in a discriminatory manner was that for Professor Spivack's Fall 2005 Legal

2

Profession course. Finally, Plaintiff argues that the fact that she was admitted to OCU Law School supports an inference that she was otherwise qualified to continue her studies and that she has offered sufficient evidence that she was qualified despite the discriminatory grade which resulted in her dismissal.

An individual with disabilities is "otherwise qualified" to participate in a program if she can meet its necessary requirements with reasonable accommodation. *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 435 (6th Cir. 1998). In determining whether Plaintiff was qualified with accommodations for exam taking to continue her studies as a law student at OCU, it is not appropriate to consider the grade she received in the Legal Profession course, which she maintains was determined in a discriminatory manner, in computing the Plaintiff's cumulative grade point average. OCU permitted Plaintiff to enroll in the Fall 2005 semester, albeit she was placed on academic probation for that semester because her Spring 2005 semester grade point was at or above 4.25 but below the 4.50 required for academic good standing. *See* Exhibit "17" to Defendants' Brief. That fact, indicating OCU considered Plaintiff otherwise qualified, with or without accommodation, to continue her studies at the Law School, together with the fact that Plaintiff's cumulative grade point average at the end of the Fall 2005 semester, without considering the alleged discriminatory grade in Legal Profession, was a 4.57, *see* Exhibit "12" to Defendants' Brief, are sufficient to establish the essential element of a *prima facie* case under both Title III of the ADA and the Rehabilitation Act that Plaintiff was "otherwise qualified" to participate in

3

the educational program in question. *See Kaltenberger, supra.*; *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999).

Defendants argue that Plaintiff cannot show that OCU acted with a discriminatory motive merely because Plaintiff's examination time was reflected on the cover sheet of her ExamSoft printout for her Legal Profession exam because Professor Spivack stated that she "had no idea that Ms. Kodatt's exam was accommodated, and . . . learned so only during the process of . . . [Ms. Kodatt's grade] appeal," indicating Professor Spivack never noticed the amount of time used by Plaintiff to complete the exam reflected on the ExamSoft cover sheet. Moreover, Defendants argue that even if Professor Spivack had noticed the extra time noted on Kodatt's ExamSoft cover sheet, that fact is not evidence that Professor Spivack had a discriminatory motive in grading Kodatt's exam. They further point out that the Plaintiff has admitted that OCU Law's disclosure of Kodatt's exam time was not intentional or part of a discriminatory plan to cause disabled students to be identified and given poor grades, citing Plaintiff's deposition testimony (Exhibit "3" to Defendants' Brief at pp. 95-6). Alternatively, Defendants' assert that Plaintiff's argument concerning the ExamSoft cover sheet time disclosure is effectively moot because Plaintiff has admitted that she personally voluntarily disclosed her learning disability and accommodations to Professor Spivack at the beginning of the Fall 2005 semester, Exhibit "3" to Defendants' Brief at pp. 48-9. Finally, Defendants suggest that merely providing a decision maker with notice that an exam is taken with accommodation is not evidence of a discriminatory motive, citing *Doe v. National Board of Medical Examiners*, 199 F.3d 146, 153 (3rd Cir. 1999), and pointing out that the Law School

4

Admissions Council discloses to all law schools LSAT scores that were obtained with accommodation.

Plaintiff with her response has submitted her affidavit in which she states that Professor Spivack told Plaintiff, after acknowledging that she had miscounted the number of check marks on Plaintiff's exam, "you do not belong in law school since you cannot even do well when given extra time." Affidavit of Shelly Kodatt (Exhibit "5" to Plaintiff's Brief) at ¶ 16. However, her argument responsive to Defendants' motion directed to the issue of motive is that a discriminatory motive or at least deliberate indifference to the likelihood that a violation of federally protected rights would result may be inferred from OCU's failure to address or remedy the disclosure of test times on ExamSoft cover sheets once Plaintiff made Defendants aware that this had occurred. To support her argument, Plaintiff cites *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) and *Duval v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2002).

At least under the Rehabilitation Act, a plaintiff must establish that the defendant's discrimination was intentional. *Barber ex rel. Barber v. Colorado Department of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009)(citing *Powers*, 184 F.3d at 1152-53 and *Davoll v. Webb*, 194 F.3d 1116, 1140-41 (10th Cir. 1999). A showing of personal ill will or animus to the disabled person is not necessary to establish intentional discrimination; rather, "intentional discrimination may be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Id.* at 1228-29, quoting *Powers v. MJB Acquisition Corp.*, 184

5

F.3d at 1153). *See also Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)("Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely and failure to act upon that likelihood.")

The parties have not directly addressed whether the standard for intentional discrimination applicable under the Rehabilitation Act is also applicable to claims under Title III of the ADA nor have the parties cited any Tenth Circuit authority directly addressing this issue. Moreover, the Court has located no authority from or within the Tenth Circuit addressing this issue. However, the Tenth Circuit in *Robertson v. Las Animas County Sheriff's Department*, 500 F.3d 1185, 1193, 1195-96 (10th Cir. 2007) held that to state a claim under Title II of the ADA, a plaintiff must allege, *inter alia*, that the denial or exclusion from participation or benefits, or discrimination "was by reason of a disability." *Id.* This is the same standard the Sixth Circuit in *Kaltenberger* applied in the context of a Title III ADA claim. *See Kaltenberger*, 162 F.3d at 435 (the plaintiff was "dismissed from the program on the basis of her handicap or disability.") The United States District Court for the District of Wyoming held that a plaintiff seeking compensatory damages under Title II of the ADA must prove that the defendant intentionally discriminated against her on the basis of disability and, citing *Powers*, 184 F.3d at 1153; *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); and *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), held that "[t]he standard for proving intentional discrimination under Title II of the ADA is the same deliberate indifference standard employed under the Rehabilitation Act." *Swenson v. Lincoln County School District No. 2*, 260 F.Supp.2d 1136 (D. Wyo. 2003).

6

Subsequently, the Honorable Timothy D. DeGuisti of this district followed *Powell, Delano-Pyle, Duvall* and *Swenson*, holding that the burden of a plaintiff in a Title II ADA claim to prove intentional discrimination may be satisfied by showing deliberate indifference. *Miles v. Cushing Public Schools*, 2008 WL 4619857 at *3 (W.D. Okla. Oct. 16, 2008)(No. CIV-06-1431-D). Because of the similarities between Title II of the ADA, *see* 42 U.S.C. § 12132, and Title III of the ADA, *see* 42 U.S.C. § 12182, the Court applies the deliberate indifference standard for proving intentional discrimination under Title III of the ADA.

Plaintiff has submitted no evidence from which a reasonable fact finder could find that OCU intentionally discriminated against Plaintiff or was deliberately indifferent to a strong likelihood that Plaintiff's federally protected rights would be violated by disclosure of test times on ExamSoft cover sheets or which raises a genuine issue in this regard. Presumably, the time utilized to take examinations were disclosed on the ExamSoft cover sheets of all students who took the Legal Profession and/or other law school examinations on the secure computer program known as ExamSoft; however, there is no evidence that that was the case. In any event, however, Plaintiff has failed to submit any evidence that Defendants even knew that the examination times would be disclosed on the ExamSoft cover sheets. Absent a showing that OCU had such knowledge in advance of administration of the exams, it cannot be inferred that OCU was aware of the possibility that a professor or professor(s) might utilize such disclosed information to discriminate in grading the exam(s) of any student(s) whose test-taking time(s) revealed that they had been accommodated by allowing them extra time and thus that such students had disabilities. Moreover, Plaintiff has admitted that the

disclosure was not intentional on OCU's part. Finally, even if disclosure of Plaintiff's test times on the cover sheet could have resulted in a discriminatory grade based upon an implicitly disclosed accommodation and hence of the examinee's disability(ies), there is no evidence before the Court that Professor Spivack ever noticed the amount of time reflected on Plaintiff's examination. There is evidence before the Court that Plaintiff told Professor Spivack and other professors at the inception of the 2005 Fall semester that she had a learning disability and received accommodation from the University because of it. *See* Deposition of Shelly Kodatt at pp. 148-49. Moreover, there is evidence before the Court that during the process of Plaintiff's grade appeal Professor Spivack told Plaintiff "you do not belong in law school since you can't even do well when given extra time." Affidavit of Shelly Kodatt (Exhibit "5" to Plaintiff's Brief) at ¶ 16. But there is no evidence before the Court that Plaintiff ever disclosed to Professor Spivack prior to taking the Legal Profession Exam that she was to receive extra or double time to take the exam or that Professor Spivack knew until after she had graded Plaintiff's exam and Plaintiff had appealed her grade that the examination in question was that of a person with a disability who had been accorded extra time to take the exam and/or that it was Plaintiff's exam. Accordingly, Plaintiff has wholly failed to present evidence that Professor Spivack and/or OCU intentionally discriminated against Plaintiff because of her disability or that OCU was deliberately indifferent to a strong likelihood that pursuit of its policies would likely result in a violation of Plaintiff's rights under the ADA and/or Rehabilitation Act. Even if Defendants had refused to remedy the disclosure of test times in the future, that refusal would not assist Plaintiff retrospectively to

8

show that the prior inadvertent disclosure of test times on ExamSoft cover sheets amounted to deliberate indifference. To the extent Plaintiff seeks injunctive relief on the basis of a purported refusal to remedy the disclosure, Plaintiff has failed to present evidence that Defendants have refused to take action to prevent disclosure of test times on examination cover sheets in the future and in fact copies of emails submitted by Plaintiff indicate that the "glitch" in the ExamSoft program that caused disclosure of test times on exam cover sheets had been fixed for the future. *See* February 7, 2006 email from Patricia Hatamyar to Lawrence Hellman (Exhibit "10" to Plaintiff's Brief). Therefore, Defendants are entitled to summary judgment on Plaintiff's claims under the ADA and the Rehabilitation Act.

Defendants also seek summary judgment on Plaintiff's *Burk* tort claim and/or any claim under the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101 *et seq.*, on the grounds that the cause of action created by *Burk* does not apply outside the employment context and that exhaustion of administrative remedies is a prerequisite to any claim predicated on the OADA and there is no evidence that Plaintiff ever filed a complaint of disability discrimination with the Oklahoma Human Rights Commission within the required time frame. Plaintiff has not responded to the former argument and argues that exhaustion is not required. Defendants are correct that the state law tort claim for a violation of a public policy of the State of Oklahoma created in *Burk v. K-Mart*, 770 P.2d 24 (Okla. 1989) only applies to wrongful employment terminations. *Clinton v. State ex rel Logan County Election Board*, 29 P.3d 543, 547 (Okla. 2001)(overruled on other grounds, *see Shirazi v. Childtime Learning Center, Inc.*, 204 P.3d 75, 78 n.13 (Okla. 2009)); *Collier v. Insignia Financial*

*Group*, 981 P.2d 321, 323 (Okla. 1999); *Mason v. State ex rel Board of Regents of University of Oklahoma,* 23 P.3d 964, 968 (Okla. Civ. App. 2000); *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 248-9 (10th Cir. 1993). Exhaustion of administrative remedies by filing a written sworn complaint with the Oklahoma Human Rights Commission within 180 days after the alleged discriminatory practice is a jurisdictional prerequisite to filing suit for any person such as Plaintiff who claims she is aggrieved by a discriminatory practice covered by the OADA. *See Shackelford v. Oklahoma Department of Corrections ex rel, State,* 182 P.3d 167, 168 (Okla. 2007). There is no evidence before the Court that Plaintiff ever complied with this requirement. Thus, Defendants are entitled to summary judgment on Plaintiff's *Burk* claim and any claim under the OADA.

Finally, Defendants seek summary judgment on Plaintiff's claims for breach of contract, promissory estoppel and negligence. Plaintiff's breach of contract claim is predicated on an alleged implied contract between Plaintiff and Defendants set forth in the Student Handbook and university publications and the alleged promise therein to provide a nondiscriminatory learning environment, *see* Petition, now Complaint (Exhibit "25" to Defendants' Brief) at ¶¶ 48-49, which Plaintiff contends Defendants breached by condoning discriminatory grading by Professor Spivack and failing to take reasonable action to address the discrimination, *id.* at ¶ 49, by failing to follow the procedures set forth therein for grade appeals and academic dismissals and by breaching its anonymous grading policy when it disclosed Plaintiff's accommodation of extra time, thereby making her 2005 Fall Semester examinations non-anonymous. *Id.* at ¶¶ 51-52. However, as Defendants point out, the

10

Student Handbook states that it "does not constitute a contract between a student and the University or the Law School." Student Handbook (Exhibit "4" to Defendants' Reply Brief) at I. Moreover, even if the Student Handbook and the policies and procedures contained therein constituted a contract, Plaintiff has failed to present any evidence from which reasonable jurors could find a material breach of that contract so as to create a genuine issue of material fact. Plaintiff has failed to present evidence from which reasonable jurors could find that Defendants discriminated against Plaintiff or condoned any discriminatory grading of the Plaintiff, *see* above, or that any action by Defendants actually resulted in a breach of an anonymous grading policy, assuming that policy existed. Likewise, upon review of all of the evidence herein, the Court concludes that reasonable jurors could not find that the minor, if not trivial, deviations in aspects of the grade appeal procedures of which Plaintiff has submitted evidence amounted to a material breach of contract, even assuming that the Academic Standard and Regulations and/or the grade appeal procedures set forth therein constituted a contract.

Plaintiff's promissory estoppel claim is predicated on alleged implied promises of non-discrimination, fair and non-arbitrary treatment and "that action would be taken in response to Plaintiff's grade appeal, academic dismissal, and her complaint for disability discrimination." Complaint at ¶ 56. Plaintiff alleges that she reasonably relied on these alleged promises to her detriment, presuming that she would be graded according to her performance rather than her disability, "by committing her personal resources and time to her

legal studies" and "throughout the grade appeal and academic dismissal appeal processes." *Id.* at ¶ 58.

Assuming that without deciding that the policies and procedures to which Plaintiff refers are implied promises, Defendants are correct that Plaintiff has failed to present any evidence that she relied on such implied promises in deciding to attend OCU Law School in the 2004-2005 academic year, an essential element of Plaintiff's promissory estoppel claim on which she has the burden of proof. Additionally, Plaintiff has failed to present evidence from which a reasonable fact finder could find that she received the grade she did in the Legal Profession course because of her disability, *see above*, particularly given that great deference that must be accorded university faculty's academic decisions such as grading and dismissal of a student for academic reasons. *See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523, 532 (1985). *See also Clifton-Davis v. State*, 930 P.2d 833, 835 (Okla. Civ. App. 1996). With respect to the grade appeal and dismissal appeal procedures, the evidence before the Court shows that OCU substantially complied with its written procedures for grade appeals and appeals of academic dismissals. If the time frames in which various actions taken in a grade appeal are to be completed, that the Dean of the Law School rather than the Vice President of Academic Affairs is to decide the appeal and that the faculty member is required to submit a copy of the exam or grade book and other relevant information to the Dean or VPAA with his or her response as set out in the Academic Standards and Regulations (Exhibit "26" to Defendants' Brief) at pp. D-8 to D-9, amount to promises, Plaintiff has failed to present evidence that she reasonably relied

12

on such alleged promises that each of those procedural details would be followed to her detriment, *see Russell v. Board of County Commissioners, Carter County*, 952 P.2d 492, 503 (Okla. 1997)(elements of promissory estoppel), which would require a showing that the minor deviations from procedural details had a detrimental impact on the results of Plaintiff's grade appeal and the dismissal appeal. *See Atria v. Vanderbilt University*, 142 Fed. Appx. 246, 256-57, 2005 WL 1703702 at * 9 (6th Cir. July 19, 2005). Moreover, Plaintiff has submitted no evidence from which a reasonable fact finder could conclude that hardship or unfairness can be avoided only by enforcement of the alleged implied promises relating to the procedural details. *See Russell*, 952 P.2d t 503 (fourth essential element necessary to establish promissory estoppel is that "hardship or unfairness can be avoided only by the promise's enforcement").

Plaintiff's negligence claim is predicated on Defendants' governing board's, President's and administration's failure to properly train and supervise administration members and faculty to ensure that they provide equal accommodation to students with disabilities and abide by the law regarding such students, which she claims resulted in her being discriminated against because of her disability and deprived of accommodations and treatment afforded individuals in her situation. Complaint at ¶¶ 61-62. However, Plaintiff has submitted no evidence from which reasonable jurors could find that she was discriminated against because of her disability or that she was deprived of any reasonable accommodation she requested or any "treatment" (appeals?) afforded individuals in her situation. *See* above. Therefore, Plaintiff cannot show that she sustained any loss or damage

as a result of the alleged negligence. Accordingly, Defendants are entitled to summary judgment on Plaintiff's negligence claim.

In accordance with the foregoing, Defendants' motion for summary judgment on Plaintiff's Complaint is GRANTED.

IT IS SO ORDERED this 22nd day of January, 2010.

*/s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE