UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALEXANDRA GUILLOU,<br><br>            Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS FOR THE OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES;<br>STATE OF OKLAHOMA ex rel. OKLAHOMA STATE UNIVERSITY;<br>ST. MATTHEWS UNIVERSITY;<br>LUCINDA KERSHAW;<br>DR. DANIEL BURBA;<br>DR. CHRIS ROSS; and<br>DR. MARGI GILMOUR;<br><br>            Defendants. | Civil Action No.: CIV-17-988-HE |

**PLAINTIFF'S RESPONSE IN OPPOSTION TO DEFENDANT ST. MATTHEW'S UNIVERITY, INC.'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW Plaintiff, Alexandra Guillou, by and through her undersigned counsel, Jason J. Bach, Esq., of The Bach Law Firm, PLLC, and R. Jack Freeman, respectfully requests that this Court deny Defendant St. Matthew's University's ("SMU") Motion to Dismiss (the "Motion"). In support of this Opposition, Ms. Guillou respectfully represents as follows:

**I.    INTRODUCTION**

Ms. Guillou brought an action against Defendant seeking damages and injunctive relief to remedy violations of her rights secured by the Americans with Disabilities Act

1

("ADA") and Section 504 of the Rehabilitation Act ("Section 504") and for breach of contract and the covenant of good faith and fair dealing. Ms. Guillou was a veterinary student at SMU and scheduled to begin her Year IV clinical program in fall 2016 at Oklahoma State University's ("OSU") Center for Veterinary Health Sciences ("CVHS"), an affiliate school of SMU. However, shortly after arriving at the program, Ms. Guillou experienced significant medical problems and sought accommodations, assistance and support through OSU and SMU.

As a result of her medical problems and requests for accommodation, Ms. Guillou was subject to pervasive discrimination and retaliation at the hands of OSU CVSH administration, including Lucinda Kershaw, Daniel Burba, Chris Ross, and Margi Gilmour. She endured targeted hostility, and when she spoke up about the hostility and discrimination, she faced more mistreatment. SMU knew of the harassment and discrimination Ms. Guillou endured, but failed to take any action to address OSU's actions or prevent further discrimination and harassment in violation of the ADA, Section 504 and in breach of her contractual rights and the covenant of good faith and fair dealing. Ms. Guillou filed suit seeking injunctive relief and damages for Defendant's actions. Defendant filed its Motion to Dismiss on December 4, 2017 seeking to dismiss all of Ms. Guillou's claims. Ms. Guillou now files this Opposition in response.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007). "This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The plaintiff's facts need only show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (To be plausible, a claim must plead factual allegations sufficient to allow "the court to draw a reasonable inference that the defendant is liable for the misconduct" above a "speculative level.").

While "labels and conclusions, or a formulaic recitation of the elements of a cause of action" will not suffice to survive a motion to dismiss, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Smith v. U.S.*, 561 F.3d 1090, 1104 (10th Cir. 2009) (internal quotations and citations omitted); Fed. R. Civ. P. 8(a)(2) (To withstand a motion to dismiss, however, a complaint must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

### III. ARGUMENT AND AUTHORITIES

**A. Ms. Guillou alleges that SMU is a post-secondary institution and thus is a public accommodation under Title III of the ADA**

"Public accommodations" under Title III of the ADA[1] include "a nursery,

---

[1] SMU is correct that Ms. Guillou intended to bring a cause of action under Title III of the ADA and the Rehabilitation Act, rather than Title II as the cause is captioned in her complaint. As addressed below, if given leave, Ms. Guillou intends to file an amended

3

elementary, secondary, undergraduate, or postgraduate private school, or other place of education" whose operations effect commerce, including between any foreign country and any state. 42 U.S.C. § 12181(1), (7)(J). Ms. Guillou has alleged that SMU is an educational institution that charges students to attend. Compl. ¶¶ 14-15, 40. To the extent any inference is required to arrive at the conclusion that these facts likely mean SMU is meets the definition of public accommodation, such inference would undoubtedly be reasonable. *See Iqbal*, 556 U.S. at 678.

### B. Ms. Guillou clearly alleges SMU receives federal financial assistance and thus is subject to Section 504

Defendant cites to no support for the premise that, at this stage, Ms. Guillou must do anything more than plainly allege that SMU, an educational institution of the sort that nearly always received federal funding in some manner, received federal financial assistance. *See, e.g., Ryan v. Shawnee Mission U.S.D. 512*, 416 F. Supp. 2d 1090, 1097 (D. Kan. 2006) (noting such an allegation is not even necessary where the subject entity is the type typically receiving such assistance); *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. CIV.A. 10-1681 MLC, 2012 WL 5867148, at *5 (D.N.J. Nov. 19, 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014) (subject veterinary school with a foreign campus was the recipient of federal financial assistance). In *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1233 (D. Kan. 1995), a case addressing Title VI on which Defendant relies, the plaintiff did not alleged that the Bank received federal funding as required under the statute, but only that

---

complaint correcting this error and thus addresses SMU's arguments directed towards the intended claims under Title III of the ADA and the Rehabilitation Act.

a Bank's accounts were federally insured – which Title VI specifically and explicitly exempts from the definition of federal financial assistance. Notably, had the plaintiff in *Butler* made a claim under the Rehabilitation Act, his allegation would have sufficed as the Rehabilitation Act has no comparable exclusion. *See Moore v. Sun Bank of N. Fla., N.A*, 923 F.2d 1423, 1431 (11th Cir. 1991).

All that Ms. Guillou is required to do is what she has done here – set forth an allegation that the school receives federal financial assistance. *See Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992); *Mattfeldt-Bancroft v. Univ. of Utah*, No. 2:04 CV 722 DAK, *6 n.1 (D. Utah Jan. 3, 2005) (an argument that a complaint alleged only that a university received federal financial assistance, and not a particular type of funding, was not meritorious); *c.f. Foster v. Gallup Police Dep't*, No. 14-970 SCY/WPL, 2015 WL 13665394, at *4 (D.N.M. Mar. 2, 2015) (dismissing Rehabilitation Act claim where plaintiff failed to allege receipt of federal funding); *Ryan*, 416 F. Supp. 2d at 1097 (noting the complete failure to allege that a school district received federal financial assistance might be problematic). Like any other alleged fact, this must be taken as true at this stage and any argument that it is not true must be saved for summary judgment. *See Casanova*, 595 F.3d at 1124; *Ryan*, 416 F. Supp. 2d at 1097.

**C. Extraterritorial application of Title III of the ADA and the Rehabilitation Act is not required, as Ms. Guillou does not assert any non-domestic conduct**

In arguing that Ms. Guillou's complaint should be dismissed because of the lack of extraterritorial application of the Rehabilitation Act or the ADA, Defendant requires this Court to assume that they are a "foreign educational institution" immune from the statutes,

5

contradicting Ms. Guillou's allegations. Taking Ms. Guillou's well-pleaded factual allegations as true, viewed in the light most favorable to her, she has plausibly alleged that SMU is subject to the ADA and Rehabilitation Act. Ms. Guillou has clearly alleged that SMU is subject to the ADA and Section 504 and that all relevant actions occurred in Oklahoma. Compl. ¶8. From these facts, taken as true, SMU and its action were subject to the ADA and Section 504.

Even if a consideration of extraterritoriality might ultimately be necessary in this case, it would not be appropriate at this stage, prior to discovery. Nor would such a consideration end so clearly in SMU's favor, as Defendant clearly hopes. In the sole apparent case addressing an application of the ADA and Rehabilitation Act to a foreign educational institution, the court did not make such a determination until the summary judgment stage, when it was clear the institution was a foreign institution and application of the statutes would be extraterritorial. *Archut*, 2012 WL 5867148 at *1 (D.N.J. Nov. 19, 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014).

In *Archut*, a veterinary student sued veterinary school Ross University, based in St. Kitts, and its parent company, U.S. based DeVry, for violations of the ADA and Rehabilitation Act. *Id.* At the time the court ruled, far more was clear in *Archut* than is – or is required to be – clear at this stage of Ms. Guillou's case. Ross was clearly a foreign company based in St. Kitts and, though the university received some administrative support in a U.S. office, all relevant decisions had been made in St. Kitts. *Id.* The plaintiff was at all relevant times in St. Kitts, and thus the university's actions and effects thereof occurred fully in St. Kitts. *Id.* at *1-2. Applying the standard presumption against extraterritorial

application of a statute absent express congressional intent, the court in *Arhut* found that neither Title III of the ADA nor the Rehabilitation Act applied extraterritorially. *Id.* at *10-11.

In Ms. Guillou's case, in contrast, SMU is an institution that effectively operates its Year IV program in the United States, retaining responsibility for, oversight of, and financial involvement with its students. Compl. ¶¶ 15-16, 18, 22-23, 40. There is little about Ms. Guillou's case that at this point suggests that her complaint requires the extension of the ADA or Rehabilitation Act outside of the United States, and thus Defendant's Motion should be denied.

**D. Ms. Guillou has sufficiently alleged that SMU has both direct and oversight liability under the ADA and Section 504 for its failure to address discriminatory actions by OSU**

Both Title III of the ADA and the Rehabilitation Act prohibit covered entities from discriminating on the basis of disability "through any contractual, licensing, or other arrangements." 28 C.F.R. §§ 36.202, 36.204; 34 C.F.R. §§ 104.4(b); 104.43. These responsibilities do not depend on the covered entity retaining any measure of control over the third party with whom it makes such contractual, licensing or other arrangements. *Kerr v. Heather Gardens Ass'n*, No. 09-cv-00409, 2010 WL 3791484, at *11 (D. Colo. Sep. 22, 2010) (analyzing the same language in a Title II case and holding that "nothing in the language of the Regulations" requires the covered entity "exercise control over the services, programs, or activities" and finding liability even if no control existed).

Ms. Guillou has sufficiently alleged a "contractual, licensing or other arrangement" between SMU and OSU, in that fourth year SMU students attend an SMU affiliate program

7

at OSU, under an affiliate agreement, such that SMU retains an affirmative obligation to ensure no discrimination occurs at OSU and direct liability for any that does. Importantly, SMU has not challenged Ms. Guillou's complaint with respect to OSU's violations of the ADA and Rehabilitation Act.

Further, while the contractual or other arrangement SMU had with OSU for the operation of its fourth year program makes this case distinct from those relied on by Defendant, which do not involve any such arrangement between covered entity and discriminating actor, Ms. Guillou has sufficiently alleged SMU's liability under the ADA and Section 504 even under that line of cases. *See, e.g., Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 644 (U.S. 1999) (distinguishing school liability for teacher or student on student harassment from a contractual arrangement).

First, contrary to Defendant's characterization, this case is far more analogous to the case of a school liable for teacher on student harassment rather than a school liable for student on student harassment. In the teacher on student context, a school is liable for the harassment where there was actual notice and "an official decision by the recipient not to remedy the violation." *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (U.S. 1998). Ms. Guillou has pled such notice and failure to act, where she contacted SMU about the situation directly, several times, in addition to the communications it had from OSU. Compl. ¶¶18, 22-23, 40.

Further, OSU CVHS serves as an affiliate program for SMU, where SMU's students complete a portion of their education. *Id.* at ¶3. It is reasonable to infer that this affiliate arrangement, in which SMU provides education to its fourth year students through and in

conjunction with OSU, provides SMU with sufficient control over OSU or the placement of students there to meet the standard under *Gebser* and *Davis*.

As such, Ms. Guillou is entitled to proceed on her claim for declaratory and injunctive relief against SMU under the ADA and declaratory and injunctive relief and damages under the Rehabilitation Act.

### E. Allegations relying on enrollment documents and other publications establish the formation of a contract, which here contained sufficiently definite terms

Plaintiff has asserted sufficient facts to allege a breach of contract. To survive a motion to dismiss on a breach of contract claim, Plaintiff must set forth sufficient facts to allege: (1) the formation of a contract; (2) a breach of that contract; and (3) actual damages suffered from that breach. *Digital Design Group, Inc. v. Information Builders*, *Inc.*, 24 P.3d 834, 843 (Okla. 2001). Ms. Guillou has plausibly alleged the formation of a contract "by alleging a contract was formed from enrollment documents and various other publications" given to her by SMU. *See Spencer v. Vatterott Educ. Ctrs., Inc.*, Case No. CIV-12-116-KEW, 2014 WL 1331033, at *1 (E.D. Okla. Mar. 31, 2014) (citing *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992), quoting *Zumbrun v. Univ. of S. Cal.*, 101 Cal. Rptr. 499, 504 (1972) ("[I]n the United States [] the 'basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract.'")).

Though Defendant attempts to rely on employment contracts, the limitations on implied contracts in employment relationships are driven in part by considerations not

9

present here – namely, Oklahoma's strong employment at will principles that courts are loathe to modify – and thus is not as analogous as Defendant contends, particularly where the employee sought to have the employee manual modify the legal at will status. *See e.g., Hayes v. Eateries, Inc.*, 905 P.2d 778, 782 (Okla. 1995); *Tsotaddle v. Absentee Shawnee Housing Auth.*, 20 P.3d 153, 157-58 (Okla. Civ. App. 2000).

Nonetheless, a review of cases in the employment context demonstrates that even under that standard, Ms. Guillou has sufficiently alleged a breach of contract claim. A "vague assurance," which will not support a claim for breach, is one that does not purport to place substantive restrictions on the employer, or in this case, the university. *See Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1461 (10th Cir. 1997). "Vague assurances" have been found to include an oral assurance that employment would continue if performance was satisfactory or a general assurance that employees would not be retaliated against. *See Hayes*, 905 P.2d at 782; *Downs v. Novartis Pharm. Corp.*, No. 09-CV-0228-CVE-PJC, 2009 WL 1939832, at *4 (N.D. Okla. July 7, 2009).

In contrast, an Oklahoma Court found sufficiently definite statements to support a contract where the two handbook provisions relied upon by the employee provided that "[t]he employment of personnel and all actions affecting employees shall be based solely on merit, ability, cooperation, attitude and justice" and that, as paraphrased by the court, "employees may choose representatives, present grievances, and be treated in a fair and equitable manner..." *Tsotaddle*, 20 P.3d at 157-58.

Clear statements of non-discrimination in conduct – such as that quoted by Ms. Guillou in her complaint as one of the terms of the asserted contract – have also been found

to be sufficiently definite so as to support an implied contract. *Black*, 107 F.3d at 1462. In *Black*, the Tenth Circuit, applying Oklahoma law, found that "the promise that '[a]ll relations and decisions pertaining to employment . . . [and] terminations . . . will be executed without regard to . . . physical . . . handicap. . . .' is more than a mere 'vague assurance' or 'puffery,' but rather is a 'substantive restriction' on Baker Oil's ability to terminate its employees.'"

The specific term cited by Ms. Guillou is substantially similar: "No person shall be excluded from participation in, denied benefits of, or be subject to discrimination under any program or activity sponsored or conducted by St. Matthew's University, on any basis prohibited by applicable law, including, but not limited to, race, color, national origin, sex, age, or handicap." Compl. ¶ 95.[2]

Having sufficiently alleged a contract, Ms. Guillou has also sufficiently alleged a breach, by setting forth an allegation that SMU permitted OSU to discriminate against Ms. Guillou while she was an affiliate student, still under the oversight of SMU and working

---

[2] SMU has attempted to introduce documents outside the pleadings, however the entirety of the documents attached by SMU are not central to Ms. Guillou's claim – one is not even from the relevant years - and are both under and over inclusive such that, with the exceptions of the provisions stated in Ms. Guillou's complaint, they should not be considered. *See* Fed. R. Civ. P. 12(b)(6); *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (finding district court reasonably decided a motion for dismiss without consideration of additional documents where defendant attached some, but not all, referenced documents, as well as included materials beyond what was referenced in the complaint); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (noting that documents attached to a motion to dismiss must be "indisputably authentic" to be considered). Ms. Guillou also notes that even if they were to be considered, they do little to assist SMU's Motion as a whole, given their multiple references to U.S. law and listing of U.S. addresses for SMU.

towards an SMU degree. That is all that is required at this stage – Ms. Guillou need not plead every possible fact in great detail to set forth a plausible claim. *See Spencer*, 2014 WL 1331033, at *1 ("While it states Plaintiffs have still not adequately identified the 'certain number of hours of instruction' promised, Vatterott demands a level of specificity in the initial pleading which is not required to state a plausible claim."). To the extent SMU argues that "applicable law" is susceptible to more than one meaning, the meaning of an ambiguous contract cannot be determined at the motion to dismiss stage. *See Ahlschlager v. Lawton School Dist.*, 242 P.3d 509, 515 (Okla. 2010) (interpretation of ambiguous terms is mixed question of law and fact that requires consideration of extrinsic evidence and circumstance).

### F. Ms. Guillou alleges SMU acted in bad faith such that her claim for breach of the covenant of good faith and fair dealing should be permitted to proceed

Oklahoma recognizes an implied duty of good faith and fair dealing in every contract. *Gens v. Casady Sch.*, 177 P.3d 565, 570 (Okla. 2008). This encompasses both the standard breach of contractual duty of good faith and fair dealing, captured in breach of contract, and the tort of bad faith breach. *Fuqua v. Lindsey Management Co., Inc.*, No. CIV-07-827-HE, 2008 WL 2894064, at * 3 (W.D. Okla. Jul. 22, 2008) ("Plaintiffs allude both to cases involving claims for breach of the contractual duty of good faith and fair dealing and to cases involving the tort of bad faith breach. The reach of the two theories of recovery is not the same."). Defendant challenges Ms. Guillou solely under the tort theory.

The tort of bad faith breach will generally not be found in the absence of a "special relationship" between the parties. *Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp.

2d 1249, 1263 (W.D. Okla. 2012). This is most commonly found between insurer and insured, because they involve a disparity in bargaining power such that the weaker party has no say in the terms, and the insured undertakes the contract not for commercial advantage, but to eliminate risk. *Id.* However, a tortious breach has also been found in the breach of a construction contract involving deceit and where a surety breaches the duty of good faith and fair dealing. *See EKE Builders, Inc. v. Quail Bluff Assocs.*, 714 P.2d 604 (Okla. Civ. App. 1985) (construction contract); *Worldlogics Corp. v. Chatham Reinsurance Corp.*, 108 P.3d 5 (Okla. Civ. App. 2004) (breach by surety).

Further a tortious breach may be found where there is "gross recklessness or wanton negligence." *Rodgers v. Tecumseh Bank*, 726 P.2d. 1223, 1227 (Okla. 1988) ("This is not to say that under every fact situation arising from a breach of contract that recovery may never lie. Gross recklessness or wanton negligence on behalf of a party to a contract may call for an application of the theory of tortious breach of contract."); *see also McGivern, Gilliard & Curthoys v. Chartis Claims Inc.*, No. 12-CV-0200-CVE-TLW, 2012 WL 2917336, at *2 (N.D. Okla. Jul. 17, 2012) ("Although the Oklahoma Supreme Court has not expressly recognized a claim for tortious breach of contract, the Oklahoma Supreme Court has suggested that '[g]ross recklessness or wanton negligence on behalf of a party to a contract may call for an application of the theory of tortious breach of contract.'") (citing *Rogers*, 756 P.2d. at 1227).

The Oklahoma Supreme Court found that where a customer had alleged a bank's withholding of funds was intentional, malicious, and in reckless and wanton disregard, the motion to dismiss plaintiff's tortious breach claim should have been denied. *Beshara v.*

*Southern Nat. Bank*, 928 P.2d 280, 288 (Okla. 1996). Here, Ms. Guillou has set forth both elements similar to those in a special relationship and intentional and reckless actions. Ms. Guillou was no more able to negotiate the terms of the her contract with SMU than an insured is with an insurer, nor was she on the same economic footing as SMU or entering into the contract with the same purely commercial purpose as SMU. Further, Ms. Guillou has alleged that in the face of pervasive and persist harassment and discrimination on the basis of her disability, in clear violation of the terms of her contract with SMU, SMU took no action to address OSU's actions or otherwise stop the discrimination.

These allegations are sufficient to set forth a plausible claim for tortious breach such that Ms. Guillou should be permitted to proceed with her claim. *See Gens*, 177 P.3d at 570 (Okla. 2008) ("Gens has asserted the existence of a contract, the breach thereof, and facts from which it might be determined that the breach was in bad faith…It is of little consequence whether the bad faith breach might result in independent tort liability. The allegations of breach of contract are sufficient to survive a motion to dismiss."); *Beshara*, 928 P.2d at 288.

## IV.    REQUEST FOR LEAVE TO AMEND THE COMPLAINT SHOULD THE COURT BE INCLINED TO GRANT ANY PORTION OF THE MOTION

Ms. Guillou requests leave to amend her Complaint so as to correct the causes of action to replace the claim under Title II of the ADA with one under Title III of the ADA and the Rehabilitation Act, as well as to address any bases on which the Court may be inclined to grant SMU's Motion. *See Exhibit #1*, Proposed First Amended Complaint. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. Pro. 15(a).

This presumption in favor of leave to amend aligns with the Rule's underlying purpose of advancing decisions on the merits, rather than pleadings or technicalities. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957). Thus, leave to amend should not be denied in the absence of substantial reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010). Ms. Guillou respectfully requests leave to amend her complaint.

## V.     CONCLUSION

For the reasons stated above, Ms. Guillou requests that this Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

**THE BACH LAW FIRM, LLC**

 */s/ Jason J. Bach*
Jason J. Bach, Esq.
(Admitted Pro Hac Vice)
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
        and

> **GRAHAM &FREEMAN, PLLC**
> R. Jack Freeman, OBA #3128
> 6226 East 101st Street, Suite 300
> Tulsa, Oklahoma 74137-7117
> Telephone: (918) 298-1716
> Facsimile: (918) 298-1728
> Email: jfreeman@grahamfreeman.com
> *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Clinton W. Pratt
Clint.pratt@okstate.edu

Stephen R. Stephens
Steve.stephens@okstate.edu

Courtney K. Warmington
cwarmington@fullertubb.com

J. Jeremy Tub
Jeremy.tubb@fullertubb.com

Tiffany J. Wythe
Tiffany.wythe@fullertubb.com

Kimberly F. Williams
kwilliams@locklord.com

Sean W. Kilian
skilian@locklord.com

Margaret McCorrow-Love
mml@lovelawfirm.legal

John L. Love
jjl@lovelawfirm.legal

                                              */s/ Jason J. Bach*
                                              Jason J. Bach, Esq.